IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
John Miller CARROLL, Attorney at Law.

OFFICE OF LAWYER REGULATION, f/k/a Board of Attorneys Professional Responsibility, Complainant-Appellant-Respondent,

v.

John Miller CARROLL, Respondent-Respondent-Appellant.

Supreme Court

*No. 00–1426–D. Oral argument February 10, 2004.—
Decided March 10, 2004.*

2004 WI 19

(Also reported in 675 N.W.2d 792.)

For the respondent-respondent-appellant there were briefs by *John Miller Carroll,* New London, and oral argument by *John M. Carroll.*

For the complainant-appellant-respondent there was a brief and oral argument by *Julie M. Falk,* assistant litigation counsel.

¶ 1. PER CURIAM. This is an appeal by John Miller Carroll from the findings of fact, conclusions of law, and recommendations of Referee Konrad Tuchscherer regarding Mr. Carroll's petition for reinstatement of his license to practice law in Wisconsin.

¶ 2. We review this matter pursuant to SCR 22.33(1) and (2).[1] Mr. Carroll was determined not to have satisfied the requirements for reinstatement. The referee recommended that after the denial of the reinstatement petition Mr. Carroll be permitted to again seek reinstatement in nine months pursuant to SCR

---

[1] SCR 22.33(1) and (2) provide:

(1) The director or the petitioner may file in the supreme court an appeal from the referee's report within 20 days after the filing of the report.

(2) An appeal from the report of the referee is conducted under the rules governing civil appeals to the supreme court. The supreme court shall place the appeal on its first assignment of cases after the briefs are filed.

22.33(4).[2] The referee also recommended that he pay the costs of the Office of Lawyer Regulation (OLR) in this proceeding.

¶ 3. Except as will be noted, we approve the findings and conclusions of the referee and determine that Mr. Carroll has failed to meet his burden of proof to establish the requirements for reinstatement. Accordingly, we accept the referee's recommendation that his petition for reinstatement be denied. However, we determine that Mr. Carroll can petition for reinstatement six months after the date of this opinion.

¶ 4. Mr. Carroll was admitted to practice law in Wisconsin in 1987 and has a substantial attorney disciplinary history. In 1992 he received a private reprimand for failing to hold funds in trust in which both he and his former law firm claimed an interest. In 1997 he received a private reprimand for performing work for a client after his services were terminated and for misrepresenting that he had filed a motion on behalf of the client. In 1999 he received a public reprimand for neglect of a matter, for failing to communicate with a client, and failing to return a retainer.

¶ 5. This reinstatement proceeding stems from Mr. Carroll's one-year suspension which commenced on January 10, 2002. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, 248 Wis. 2d 662, 636 N.W.2d 718. In that disciplinary proceeding he was found guilty of eight counts of professional misconduct, four of which were related to trust account and associated retainer and legal fee matters. The other four involved failure to diligently pursue a client's claim,

---

[2] SCR 22.33(4) provides: "(4) If the supreme court denies a petition for reinstatement, the petitioner may again file a petition for reinstatement commencing nine months after the denial."

failure to keep a client reasonably informed about the status of a matter, failure to disclose to and cooperate with the Board of Attorneys Professional Responsibility, and engaging in conduct involving dishonesty, fraud/deceit/misrepresentation. Our opinion stated:

> [His conduct] demonstrated a pattern of deception and misdealing with clients that runs to the very heart of the integrity of the attorney-client relationship. . . . [G]iven the number of violations found here, as well as the previous violations for which Attorney Carroll was reprimanded, it is apparent that there is a substantial need for others to be protected from his propensity for misconduct. . . . [I]t is equally apparent, given his three prior reprimands, that Attorney Carroll has a substantial disregard for the rules of professional conduct and likely will commit future violations unless a serious sanction is imposed now.

248 Wis. 2d 662, ¶ 41.

¶ 6. Finally, while suspended Mr. Carroll consented to the issuance of a public reprimand for pre-suspension conduct involving loaning funds to a personal injury client in conjunction with pending litigation.

¶ 7. Mr. Carroll petitioned for reinstatement on October 23, 2002, and the hearing was held on April 15, 2003. The referee's report was issued on June 2, 2003.

## STANDARD FOR REINSTATEMENT

¶ 8. SCR 22.31(1)[3] provides the standard to be met for reinstatement. Specifically, the petitioner by clear, satisfactory, and convincing evidence must show

---

[3] SCR 22.31(1) provides:

(1) The petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:

that he or she has the moral character to practice law, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that he or she has complied with SCR 22.26[4] and the terms of the suspension. In addition to these three requirements, SCR

(a) That he or she has the moral character to practice law in Wisconsin.

(b) That his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

(c) That his or her representations in the petition, including the representations required by SCR 22.29(4)(a) to (m) and 22.29(5), are substantiated.

(d) That he or she has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

[4] SCR 22.26 provides: Activities following suspension or revocation.

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

180

22.29(4)[5] states related requirements that the petition for reinstatement "shall show." All of these additional

(d) Within the first 15 days after the effective date of suspension or revocation, make all arrangements for the temporary or permanent closing or winding up of the attorney's practice. The attorney may assist in having others take over clients' work in progress.

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

(i) Full compliance with the provisions of the suspension or revocation order and with the rules and procedures regarding the closing of the attorney's practice.

(ii) A list of all jurisdictions, including state, federal and administrative bodies, before which the attorney is admitted to practice.

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

(f) Maintain records of the various steps taken under this rule in order that, in any subsequent proceeding instituted by or against the attorney, proof of compliance with the rule and with the suspension or revocation order is available.

(2) An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

(3) Proof of compliance with this rule is a condition precedent to reinstatement of the attorney's license to practice law.

[5] SCR. 22.29(4) provides:

(4) The petition for reinstatement shall show all of the following:

(a) The petitioner desires to have the petitioner's license reinstated.

181

requirements are also effectively incorporated into SCR 22.31(1).

¶ 9. This court will adopt the referee's findings of fact unless clearly erroneous. *In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 498 N.W.2d 380 (1983). The court does not grant deference to the referee's conclusions of law and reviews them on a de

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct or, if not, the petitioner's explanation of the failure or inability to do so.

novo basis. *In re Disciplinary Proceedings Against Norlin,* 104 Wis. 2d 117, 310 N.W.2d 789 (1981). The court may also impose whatever sanction it sees fit regardless of the referee's recommendation. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 10. The focus of this reinstatement was on the following standards.

## MORAL CHARACTER

¶ 11. Mr. Carroll called only one witness to testify regarding his moral character. The witness testified that he had known Mr. Carroll for six or seven years, was never in business with or a past client of his, and was unfamiliar with the specific reasons for his license suspension. However, the witness was of the opinion that Mr. Carroll "definitely" would be fit to practice law. He also stated: "I can say as a person I know John and I feel like he's a good friend and I've seen him around people, I've seen him interact with enough people. . . . I can't believe that he would do anything that would ever harm anyone." The witness stated that Mr. Carroll had expressed remorse to him for the conduct leading to the suspension.

¶ 12. The witness further stated that he was good friends with a recently-deceased attorney who had planned to testify on Mr. Carroll's behalf at the reinstatement. When asked whether the attorney would have testified on behalf of Mr. Carroll, the witness said only that "we haven't discussed it a lot, but I did hear that, yes."

¶ 13. In opposition, a former client of Mr. Carroll testified that he had done a poor job on the case and had threatened him. Mr. Carroll countered with an affidavit

from a subsequent attorney for the client who asserted that the client was dishonest.

¶ 14. The referee discounted the evidence presented by Mr. Carroll's friend, concluded as a matter of law that Mr. Carroll had failed to call any favorable witnesses having credible evidence to offer on his moral character, and therefore further concluded as a matter of law that he had failed to meet his burden to prove moral character by clear, satisfactory, and convincing evidence.

¶ 15. We adopt the findings of fact and conclusions of law of the referee with respect to the moral character element. We cannot conclude that the referee's findings are clearly erroneous. Furthermore, assuming the findings to be accurate, they clearly support the conclusion that the moral character element was not satisfied.

¶ 16. We acknowledge that "moral character" is not defined in the rules. However, the term is not reasonably subject to confusion. An individual would commonly be expected to demonstrate moral character by examples of ethical, fair, principled, and generally good conduct. The "good character" requirement is also reflected in SCR 22.29(4)(e) which requires the petitioner to demonstrate that his or her conduct since the suspension has been exemplary and above reproach. Thus, the focus is on the petitioner's conduct and character since the suspension.

¶ 17. Mr. Carroll's offer of proof on this issue was clearly inadequate. Vague and conclusory testimony by a single friend with no examples bolstering the opinion does not meet the petitioner's burden to present clear, satisfactory, and convincing evidence. The friend's

184

statement concerning what the deceased attorney would have testified, while not barred since the rules of evidence do not apply at a reinstatement proceeding,[6] was equally vague and unpersuasive. Mr. Carroll perhaps might have satisfied his burden by presenting multiple (although no particular number is required) witnesses giving examples of his post-suspension activities in a favorable light, whether they be business, civil, or personal related. Given Mr. Carroll's long disciplinary history, particularly involving mishandling of funds, he might also have provided any examples of post-suspension proper use of funds entrusted to him. In any event, what Mr. Carroll did provide did not approach the minimum necessary to sustain his burden of proof.

## PRACTICE OF LAW DURING SUSPENSION

¶ 18. Mr. Carroll was advised in a December 2001 letter from the OLR that pursuant to SCR 22.29(4)(b) he should avoid holding himself out to the public as an attorney, including using checks identifying himself as such. The referee admitted into evidence an exhibit from the OLR showing that as of August 2002 Mr. Carroll was nonetheless still maintaining a checking account at a credit union designating him as an "attorney." In addition, there was evidence that during February 2003 he opened an escrow account at the same credit union, again as an "attorney" or at least this is how the credit union listed him on its records.

---

[6] SCR 22.31(5) provides: "(5) The hearing shall be conducted pursuant to the rules of civil procedure. The rules of evidence shall not apply, and the referee may consider any relevant information presented. Interested persons may present information in support of or in opposition to reinstatement."

¶ 19. In defense, Mr. Carroll claimed that he was not holding himself out to the public as an attorney. He noted that the checking account was opened prior to suspension and when he actually issued post-suspension checks on the account he manually crossed off the "attorney" label. He further argued that the escrow account simply did not contain an "attorney" designation, which the OLR concedes is the case.

¶ 20. The referee's finding of fact that Mr. Carroll's pre-suspension checking account still utilized checks with the printed "attorney" designation is not clearly erroneous. However, the referee's finding that an escrow account was later opened with a similar designation is clearly erroneous.

¶ 21. In any event, we do not adopt the referee's conclusion of law that Mr. Carroll failed to demonstrate that he was not holding himself out as an attorney during the suspension period. While it would have been better for him to order new checks, rather than simply cross off the "attorney" designation each time he used the check, that hardly rises to the level of practicing law during his suspension period. We also do not accept the OLR's argument that at the very least Mr. Carroll was holding himself out to the financial institution as an attorney. That conclusion is simply not reasonable.

## CLOSING OF TRUST ACCOUNT

¶ 22. A particular focus of the reinstatement proceeding was on Mr. Carroll's trust account difficulties during the suspension. SCR 22.31(1), SCR 22.29(4)(h), and the suspension decision all required Mr. Carroll to comply with SCR 22.26 relating to activities following

suspension. SCR 22.26(1)(d) requires the attorney to close his or her practice during the period of suspension. The closing of the practice necessarily requires closing of a trust account.

¶ 23. The OLR required Mr. Carroll to close his trust account by January 25, 2002, 15 days after the effective date of the suspension. After he filed his compliance affidavit with the OLR, he had telephone conversations with it that eventually resulted in a February 7, 2002, letter from the OLR that acknowledged there were still funds in the trust account, and that he was having difficulty locating the clients who were to receive the funds. The OLR volunteered to assist Mr. Carroll in locating the clients and, if that did not prove successful, it indicated it would "work with you to determine the best course of action." The trust account was not closed until June 14, 2002.

¶ 24. The referee made the following findings of fact:

(1) Mr. Carroll did not timely close the trust account.

(2) Mr. Carroll misled the OLR in early February 2002 into believing there was only $8000 in the trust account remaining to be paid back to clients when, in fact, there was $20,000 in the account.

(3) When a disbursement in April 2002 was made to a client, the trust account was overdrawn. Mr. Carroll then commingled $1000 of his personal funds into the trust account to cover the payment.

187

(4) At some point prior to closure of the account Mr. Carroll improperly distributed $2500 of the trust funds to himself.

(5) In February 2003 Mr. Carroll had to open an escrow account to cover trust account disbursements of over $2000 that in reality had not occurred as of June 14, 2002.

(6) In general, the reconciliation and maintenance of the trust account during the period of closure was insufficient.

¶ 25. The referee concluded as a matter of law that Mr. Carroll violated SCR 22.26(1)(d) by failing to properly and promptly close his trust account and therefore failing to properly close his practice during the suspension period.

¶ 26. Mr. Carroll's argument in response to the findings is as follows:

(1) There never was a set time within which to close the trust account. Rather, he was permitted by the OLR to keep it open until all clients could be found. The OLR substantially—if not entirely—concedes this point.

(2) He never led the OLR into believing there was $8000 in trust when in fact there was $20,000. Rather, he simply told the OLR that two clients were owed $8000, not that this was the balance in the account. Further, he told the OLR in a February 2002 telephone conversation that there was approximately $10,000 in the account. Once again, the OLR has not argued that the referee's finding on this was entirely correct.

(3) He concedes he deposited $1000 of his own funds into the trust account to assure the checks issued from the account would clear.

188

(4) He concedes that he improperly disbursed $2500 to himself when in fact the amount should have been $157. He claims there was confusion as to what amount a particular client was owed and as soon as he became aware of the unintentional error he rectified it, again by his own funds.

(5) He concedes that he had to later open up an escrow account to cover discrepancies that had not been resolved as of June 14, 2002, in particular the erroneous disbursement of trust funds to himself.

(6) He claimed he did accurate reconciliations of the trust account in 2002 and presented an exhibit to that effect.

¶ 27. We adopt some of these findings of fact but reject others as clearly erroneous:

(1) The finding that Mr. Carroll did not timely close his trust account is clearly erroneous. The evidence does not reflect that there was a set time in which to close the trust account once the OLR was aware that he was having difficulty locating some former clients. Although he may not have finally closed the account as quickly as would have been desirable, there is insufficient evidence to conclude that he clearly exceeded an established date for closure.

(2) The finding that Mr. Carroll misled the OLR as to the amount in the trust account in February 2002 was clearly erroneous. There is no persuasive proof that he overstated the amount in the account.

(3) In light of his concession, we adopt the finding of

189

fact that Mr. Carroll improperly commingled his personal funds into the trust account in order to meet an April 2002 payment.

(4) We adopt the finding of fact that Mr. Carroll improperly distributed $2500 of the trust funds to himself when the amount should have been substantially less, as he also concedes. He pleads confusion as an excuse and rectified the situation as soon as he was aware of the error, but that does not affect the fact that the impropriety occurred. We cannot dismiss this as an "honest error" as he requests.

(5) We adopt the finding of fact that subsequent to the closure of the trust account Mr. Carroll had to open an escrow account to cover additional trust account disbursements that in reality had not occurred as of the date of closure, yet another concession.

(6) We adopt the finding of fact that the reconciliation and maintenance of the trust account during the period of closure was in general insufficient. At the very least, Mr. Carroll's improper disbursement to himself demonstrates that the reconciliation and maintenance of the account was not satisfactory.

¶ 28. We accordingly agree with the referee's conclusion of law that Mr. Carroll violated SCR 22.26 during the period of suspension by failing to properly operate and promptly close his trust account.

RESUMPTION OF THE PRACTICE OF LAW

¶ 29. In order to alleviate concern over his demonstrated inability to properly maintain a trust ac-

count, Mr. Carroll testified that upon reinstatement he would have his criminal clients execute a fee agreement that would, at the very least, reduce the likelihood of him ever having to return any retainer. The referee found that this was a flat-fee retainer agreement which would not allow for any refund to any client under any circumstances. The referee was therefore concerned that Mr. Carroll's proposed agreement would arguably violate SCR 20:1.5(a)[7] which requires an attorney's fee

---

[7] SCR 20:1.5(a) provides:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

to be reasonable and SCR 20:1.16(d)[8] which requires an attorney to refund any advance payment of a fee that has not been earned.

¶ 30. As a result, the referee concluded as a matter of law that Mr. Carroll had failed to prove that his resumption of the practice of law would not be detrimental to the administration of justice or subversive of the public interest.

¶ 31. Mr. Carroll has argued on appeal, and the OLR concedes, that the referee misunderstood his proposed agreement and that it does permit a refund of unearned retainer. Nonetheless, the OLR argues that his intent still was to avoid any obligation or return any unearned fees in criminal cases. It also noted that Mr. Carroll would have to have a trust account for civil cases, particularly to disburse settlements.

¶ 32. We hold that the referee's finding of fact that the proposed fee agreement did not allow for any refunds to clients was clearly erroneous. However, we still conclude as a matter of law, as did the referee, that Mr. Carroll has not met his burden to demonstrate that his resumption of the practice of law would not be detrimental to the administration of justice or subversive of the public interest.

---

[8] SCR 20:1.16(d) provides:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

¶ 33. Regardless of how Mr. Carroll's proposed criminal fee agreement can be characterized, the heart of the problem is that even he recognizes his continued inability to properly handle his trust account affairs. Given his substantial disciplinary history, particularly as it relates to trust fund difficulties, we cannot conclude that Mr. Carroll has made a good faith effort to demonstrate that his trust fund problems are behind him and that his resumed practice of law would be free of misconduct in that regard.[9]

## SANCTION AND COSTS

¶ 34. Although the deficiencies in Mr. Carroll's proof of several requirements for reinstatement have been noted, the primary deficiency with his petition involves his trust account activities. His history of trust account difficulties, his difficulties in closing his trust account during the suspension, and his inadequate plan for proper trust account management upon reinstatement, all greatly concern this court. Mr. Carroll has done virtually nothing to assure this court that upon his reinstatement to the practice of law he would be able to avoid the problems that have contributed to his long history of disciplinary problems.

---

[9] We suggest that if and when Mr. Carroll again applies for reinstatement, he and the OLR consider implementing, as a condition of that reinstatement, a trust account monitoring plan. *See In re Reinstatement of Moeller,* 198 Wis. 2d 393, 542 N.W.2d 453 (1996) (trust account monitoring established as condition of reinstatement).

¶ 35. Pursuant to SCR 22.33(4) a petitioner normally may again file a petition for reinstatement nine months after denial. However, we have the discretion to effectively reduce that period. *See, e.g., In re Disciplinary Proceedings Against Eisenberg,* 122 Wis. 2d 627, 363 N.W.2d 430 (1985). In this instance we determine that Mr. Carroll should be permitted to file for reinstatement six months after the date of this opinion. He has indicated that he has been a licensed real estate broker in Wisconsin for approximately three months. His activities during that period plus the subsequent six months may enable him on his reapplication to cast his moral character in better light and demonstrate through specific examples that his handling of funds and maintenance of escrow and similar accounts is likely to improve so that we can safely conclude that he is fit to resume the practice of law without danger to the public.

¶ 36. The OLR seeks the costs of this proceeding pursuant to SCR 22.24.[10] Mr. Carroll opposes this on two grounds.

---

[10] SCR 22.24 provides: Assessment of costs.

(1) The supreme court may assess against the respondent all or a portion of the costs of a disciplinary proceeding in which misconduct is found, a medical incapacity proceeding in which it finds a medical incapacity, or a reinstatement proceeding and may enter a judgment for costs. The director may assess all or a portion of the costs of an investigation when discipline is imposed under SCR 22.09. Costs are payable to the office of lawyer regulation.

(2) In seeking the assessment of costs by the supreme court, the director shall file in the court a statement of costs within 20

¶ 37. First, he submits that an unspecified portion of the costs should not be assessed against him because they resulted from the OLR's investigation of a claim concerning his conduct which it allegedly abandoned at the hearing. He submits the OLR's position was frivolous and he should therefore not have to pay for the costs for that portion of the investigation.

¶ 38. Second, he has moved this court to preclude the OLR from recovering any costs whatsoever because it did not file its statement of costs within 14 days after this appeal was assigned for submission to the court.

¶ 39. We reject Mr. Carroll's position and deny his motion.

¶ 40. First, it does not appear that the OLR abandoned the subject claim entirely but simply did not pursue it at the hearing. Even if the claim had been pursued, it would not have affected the result here given Mr. Carroll's clear deficiency in establishing his moral character and his fitness to resume the practice of law. He failed to meet his burden to satisfy the requirements for reinstatement, regardless of whether

days after the filing of the referee's report, provided that if an appeal of the referee's report is filed or the supreme court orders briefs to be filed in response to the referee's report, the statement of costs shall be filed within 14 days after the appeal is assigned for submission to the court or the briefs ordered by the court are filed. Objection to the statement of costs shall be filed by motion within 10 days after service of the statement of costs. The director has the burden of establishing costs to be assessed.

(3) Upon the assessment of costs by the supreme court, the clerk of the supreme court shall issue a judgment for costs and furnish a transcript of the judgment to the director. The transcript of the judgment may be filed and docketed in the office of the clerk of court in any county and shall have the same force and effect as judgments docketed pursuant to Wis. Stat.

the OLR prevailed on all of its specific claims, and therefore he should have to pay all of the costs.

¶ 41. Second, we reject Mr. Carroll's contention that the OLR violated the time requirement in SCR 22.24(2). Pursuant to *In re Disciplinary Proceedings Against Bult,* 142 Wis. 2d 885, 419 N.W.2d 245 (1988) the date of submission is the date of oral argument. The time limit is also not jurisdictional and is subject to extension by this court.

¶ 42. IT IS ORDERED that the petition of John Miller Carroll for the reinstatement of his license to practice law in Wisconsin is denied.

¶ 43. IT IS FURTHER ORDERED that Mr. Carroll may again file a petition for reinstatement six months after the date of this decision.

¶ 44. IT IS FURTHER ORDERED that Mr. Carroll's motion regarding costs is denied and that he shall pay the costs of this proceeding.

¶ 45. DIANE S. SYKES, J., did not participate.