In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Hazel J. WASHINGTON, Attorney at Law.

OFFICE OF LAWYER REGULATION, Complainant,

v.

Hazel J. WASHINGTON, Respondent.

Supreme Court

*No. 2006AP578–D. Decided June 20, 2008.*

2008 WI 66

(Also reported in 750 N.W.2d 891.)

¶ 1. PER CURIAM. We review a referee's report recommending that Hazel J. Washington's license to practice law in Wisconsin be reinstated. No party has appealed from that report and recommendation. There-fore, the court's review proceeds under SCR 22.33(3).[1]

¶ 2. The standards that apply to all petitions seeking reinstatement after a disciplinary suspension/revocation are set forth in SCR 22.31(1).[2] In

---

[1] SCR 22.33(3) provides that "[i]f no appeal is timely filed, the supreme court shall review the referee's report, order reinstatement, with or without conditions, deny reinstatement, or order the parties to file briefs in the matter."

[2] SCR 22.31(1) states:

> The petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:
>
> (a) That he or she has the moral character to practice law in Wisconsin.

particular, the petitioning attorney must demonstrate by clear, satisfactory and convincing evidence that he or she has the moral character necessary to practice law in this state, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that the attorney has complied fully with the terms of the suspension order and SCR 22.26. In addition, SCR 22.31(1)(c) incorporates the statements that a petition for reinstatement must contain pursuant to SCR 22.29(4)(a)-(4m).[3] Thus, the petitioning attorney must demonstrate that the required representations in the reinstatement petition are substantiated.

(b) That his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

(c) That his or her representations in the petition, including the representations required by SCR 22.29(4)(a) to [(4m)] and 22.29(5), are substantiated.

(d) That he or she has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

[3] SCR 22.29(4)(a) through (4m) provides that a petition for reinstatement shall show all of the following:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

¶ 3. Although the referee's report discussed a number of concerns raised by the Office of Lawyer Regulation, the referee found that Attorney Washington had satisfied the requirements for the reinstatement of her license to practice law in Wisconsin. The referee found generally that Attorney Washington had proven that she has the moral character necessary to practice law in this state, that her resumption of the practice of law would not be detrimental to the administration of justice, and that she had complied with the terms of her suspension and the requirements that accompany a suspension.

¶ 4. Although we share some of the concerns raised by the referee, there is no basis on which to find that the referee's factual findings were clearly erroneous. *See In re Disciplinary Proceedings Against Carroll,* 2004 WI 19, ¶ 9, 269 Wis. 2d 172, 675 N.W.2d 792 (referee's factual findings affirmed unless clearly erro-

---

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(4m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

neous; legal conclusions reviewed on de novo basis). We agree, therefore, that Attorney Washington should be reinstated to the practice of law in this state. We decide, however, that Attorney Washington's reinstatement should be conditioned on her providing full trust account records to the OLR on a quarterly basis for a period of two years following her reinstatement. Finally, we determine that Attorney Washington should be required to pay the full costs of this reinstatement proceeding, which were $4,634.04 as of January 10, 2008.

¶ 5. Attorney Washington was admitted to the practice of law in Wisconsin in 1988. Prior to the discipline described below, she had practiced law in this state since her admission without being the subject of any disciplinary action.

¶ 6. This reinstatement proceeding stems from Attorney Washington's 18–month suspension arising out of her conviction in federal court for attempting to evade the payment of a large portion of her federal income tax due for 1998. The Internal Revenue Service (IRS) initiated an audit of Attorney Washington's federal income tax returns while she was negotiating a plan to pay off $70,000 in delinquent employment tax obligations. The IRS's investigation determined that Attorney Washington had intentionally failed to report over $100,000 in income for 1998 by depositing payments for legal services directly into her personal bank account or by directing them to her mortgage lender, thereby bypassing her business account, which Attorney Washington's accountant had been directed to use to prepare her income tax returns. Attorney Washington's hiding of this income caused an income tax loss to the federal government in excess of $31,000

for 1998. Attorney Washington also failed to report a similar amount of income in 1999 and 2000.

¶ 7. The federal authorities chose to charge Attorney Washington with only one count of tax evasion for 1998, although in her federal plea agreement Attorney Washington admitted that she had engaged in similar tax evasion for 1999 and 2000. The United States District Court for the Eastern District of Wisconsin accepted her guilty plea to the single count charged. The district court ultimately sentenced her to five months of imprisonment and two years of supervised release, 150 days of which were to be served in home confinement.

¶ 8. After the entry of Attorney Washington's guilty plea, this court summarily suspended her license to practice law in this state, effective as of February 3, 2006.

¶ 9. The OLR filed a complaint that alleged in a single count that Attorney Washington had violated SCR 20:8.4(b).[4] The OLR and Attorney Washington then entered into a stipulation, in which Attorney Washington admitted her professional misconduct. The stipulation further stated that the OLR recommended, and Attorney Washington agreed, that her license should be suspended for a period of one year.

¶ 10. After issuing an order to show cause why the suspension should not be for a period of 18 months and after considering the responses of the parties, we determined that Attorney Washington's professional misconduct required an 18–month suspension of her

[4] SCR 20:8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

382

license to practice law in Wisconsin, retroactive to February 3, 2006, the date of the summary suspension. *In re Disciplinary Proceedings Against Washington,* 2007 WI 65, 301 Wis. 2d 47, 732 N.W.2d 24. We also required Attorney Washington to pay the full costs of the disciplinary proceeding.

¶ 11. On June 12, 2007, Attorney Washington filed a petition for reinstatement. Attorney Richard M. Esenberg was appointed referee for the reinstatement proceeding.

¶ 12. The Board of Bar Examiners filed a memorandum stating that on the basis of the materials Attorney Washington had submitted concerning her continuing legal education credits, it recommended her reinstatement. The OLR, however, filed a memorandum in opposition to reinstatement. Essentially, it asserted that, based on information discovered in the course of its reinstatement investigation, Attorney Washington could not meet her burden for reinstatement. The specific objections that the OLR raised will be discussed below in the context of the referee's report.

¶ 13. The referee held a hearing on Attorney Washington's reinstatement petition on September 20, 2007. Attorney Washington and six other character witnesses testified in support of her reinstatement petition. In addition, the referee received into evidence a number of additional letters of support for Attorney Washington. The OLR did not call any witnesses in opposition, although it submitted a number of documentary exhibits, which were received by stipulation.

¶ 14. The referee issued a report and recommendation on December 21, 2007. The referee's report summarized the testimony given at the hearing and discussed a number of issues raised by the OLR's

investigation, which were addressed in exhibits filed by the OLR and in Attorney Washington's testimony.

¶ 15. First, the referee noted that Attorney Washington had previously been convicted of two felonies in 1979. Prior to becoming an attorney, Attorney Washington had been a social worker and had owned a social services agency. In connection with that agency, Attorney Washington was charged with and convicted of two counts of fraud involving overbillings to the Medicaid program. She served 18 months in prison and an additional couple of years on probation. Governor Tommy Thompson granted a pardon to Attorney Washington in 1988 following her graduation from law school and prior to her becoming licensed as an attorney in this state.

¶ 16. The referee also discussed some concerns with the winding up of two cases at the time of Attorney Washington's summary suspension. In both instances, at the time of her summary suspension, Attorney Washington had completed the briefing on separate postconviction motions for each client, T.S. and A.A. Attorney Washington failed to send the required written notice of her suspension to the two clients, to opposing counsel and to the relevant courts.[5] She also failed to acknowledge these two cases in her affidavit submitted to the OLR to show compliance with her winding up requirements under SCR 22.26. Attorney Washington testified at the hearing that she did not send written notices of her suspension or identify the postconviction motions on her list of pending cases in her compliance affidavit because she viewed those rep-

---

[5] Attorney Washington did orally inform A.A. that her license to practice law was going to be suspended.

resentations as having been concluded when she had finished preparing and filing the motions and supporting materials.

¶ 17. Attorney Washington acknowledged at the reinstatement hearing that her prior understanding of the status of those cases had been incorrect and that, in fact, those cases had remained pending at the time of her summary suspension and were subject to the notice and identification requirements of SCR 22.26. She conceded that although no hearing was expected on either of those motions, there had been no decision issued in either case at the time of her summary suspension. Thus, there could have been further filings needed in the circuit court or on appeal, and, in any event, there would have been a need to apprise the clients of the court's decision when issued and to discuss how the clients wished to proceed.

¶ 18. Ultimately, both motions were denied. After the summary suspension had been imposed, the circuit court denied the motion that Attorney Washington had filed on behalf of T.S. as untimely under the statutory provisions cited in the motion. T.S. received a copy of that decision from a source other than Attorney Washington, and he subsequently filed a grievance against her. Attorney Washington entered into a consensual public reprimand under SCR 22.09(3) in connection with her representation of T.S. The stipulated reprimand, which was approved by a referee on May 2, 2007, provided that Attorney Washington had violated SCRs 20:1.1, 20:1.16(d), 22.26(1)(a) and (b), 22.26(1)(c), 22.26(1)(e)(iii), and 20:8.4(f).

¶ 19. As was the case with T.S., the postconviction motion that Attorney Washington had filed on behalf of A.A. was also denied as time-barred and as improperly brought under Wis. Stat. § 974.06. After receiving a

copy of the circuit court's decision, A.A. filed a request for reimbursement from the Wisconsin Fund for Client Protection (the Fund). Attorney Washington was unaware of this claim and did not contest it because she was in a federal prison camp at the time notice of the claim by A.A. was mailed to her home. Ultimately, the Fund granted A.A.'s claim and paid him the $2,500 he had requested as reimbursement for the fee he had paid to Attorney Washington. At the reinstatement hearing, Attorney Washington stated that she disagreed with the Fund's payment to A.A. because she had met with A.A. on multiple occasions and had in fact done the work he had requested her to do.

¶ 20. The referee also discussed the OLR's contention that Attorney Washington had misrepresented a number of items in her responses to the OLR's reinstatement questionnaire. For example, the OLR claimed that Attorney Washington had failed to report income from the sale of a piece of real estate in October 2006, although she had shown a gain from a similar real estate transaction that had occurred in April 2006. At the reinstatement hearing, Attorney Washington explained that she had not listed the capital gain from the second sale because the IRS had immediately seized the funds as partial payment for back taxes. The referee noted that the OLR appeared to be satisfied with this explanation.

¶ 21. Another alleged misstatement in her reinstatement questionnaire responses involved a list of every civil action in which Attorney Washington was a party. Attorney Washington listed only one case, in which she had been a defendant and in which a judgment had been issued against her and then had been satisfied. She failed to include a substantial number of collection actions that had been filed on her behalf.

Attorney Washington explained that she had a long-standing arrangement with a collection attorney to collect her overdue accounts receivable. The attorney attempted to collect the funds, and if unsuccessful, often filed a collection action in circuit court. Attorney Washington stated that in most situations she was not notified by the attorney when the matter had progressed to the point of a formal legal action. Because of this arrangement and her limited involvement in the collection process, Attorney Washington stated that she had failed to consider these collection actions when responding to the OLR's reinstatement questionnaire.

¶ 22. Although the items discussed above clearly worked against Attorney Washington's reinstatement petition, the referee emphasized that Attorney Washington had exhibited genuine remorse for her conduct at the reinstatement hearing. The referee noted that Attorney Washington had readily conceded that she did not suffer from a lack of disposable income during the years in which she had misrepresented her income on her federal income tax returns. The referee also stated that while others may have attempted to excuse her misconduct as a result of a lack of business acumen or inadequate clerical support, Attorney Washington did not attempt to use any such excuses. In addition to accepting responsibility for her wrongdoing, Attorney Washington also convinced the referee that she has a genuine intention to repay her outstanding back taxes.

¶ 23. When asked to explain why she had failed to report substantial amounts of income on her 1998–2000 tax returns, Attorney Washington gave the following response:

> You know, as I go back and think, there's no reason why I did what I did, I mean, no reason that is good enough. It was wrong what I did, and I can't sit here and justify what I did.

. . .

> And it was wrong to—for example, in '99 when I took the personal injury check that should have been deposited into the business account and paid expenses, personal expenses. I didn't have to do that. At that time I just wanted a new truck. I paid $3,000 on a new lease, paid out the old lease, gave my children some money. It's all outlined in exhibits what I did with the money.
>
> I mean, I paid $30,000 on old taxes, but it wasn't supposed to go that way. And just to have those few little trinkets, God knows it hasn't been worth it. What I did was wrong, was so wrong, and I would never do nothing like that again.

¶ 24. In addition to discussing Attorney Washington's testimony, the referee briefly summarized the testimony given by six witnesses who appeared in support of her reinstatement petition. While those witnesses included Attorney Washington's ex-husband and one of her daughters, they also included a former family court commissioner before whom Attorney Washington had appeared on many occasions and an attorney who had litigated cases against Attorney Washington. The court commissioner testified that Attorney Washington had consistently been prepared for proceedings in front of her, had provided competent and zealous representation to clients who were often difficult and unfamiliar with legal proceedings, and had never attempted to mislead the court on behalf of a client. The opposing attorney and several other witnesses described the good reputation that Attorney Washington enjoyed in her community and stressed that Attorney Washington had been willing to take on challenging clients and those without substantial financial resources.

¶ 25. In the end, the referee concluded that Attorney Washington had demonstrated the necessary moral character to practice law in this state and had shown that her resumption of the practice of law would not be detrimental to the administration of justice or subversive of the public interest.

¶ 26. The referee acknowledged that there were some issues, described above, that militate against her reinstatement. He concluded, however, that these problems were explainable and technical. For example, Attorney Washington's failure to list the sales proceeds from a second sale of real estate was explainable by the fact that Attorney Washington believed that the proceeds were not really hers since the IRS immediately seized them. Similarly, her failure to list the collection actions as pending lawsuits on her reinstatement questionnaire responses, while improper, was explainable by the fact that under her normal collection arrangement she was usually not made aware of the fact that a collection matter had proceeded to the litigation stage.

¶ 27. The referee was somewhat troubled by Attorney Washington's failure to comply with the letter of the trust account rules. Although she did have some records that showed where personal injury case proceeds had come into and had gone out of her client trust account, she did not maintain the general ledger and client ledgers in the form required by the rules.

¶ 28. Similarly, the referee also expressed concern about the two postconviction motions for T.S. and A.A. The referee acknowledged Attorney Washington's belief that her filing of the written motions and supporting materials had completed the representation. While it may have been likely that no further briefing or argument would be required from the court regarding those motions, the referee noted that Attorney Washington

should have listed those matters on her list of pending cases submitted to the OLR at the time of her suspension and should have given the required notices to her clients, opposing counsel and the courts since those matters were not fully completed at the time of her suspension. The referee did conclude, however, that Attorney Washington's failure in this regard was inadvertent.

¶ 29. Although he acknowledged these various problems, the referee did not believe that these issues were serious enough to prevent Attorney Washington from resuming the practice of law. Especially given Attorney Washington's expressions of genuine remorse, the referee concluded that Attorney Washington should be given one final opportunity to practice law in this state.

¶ 30. We note at the outset of our analysis that the primary focus of the court's regulation of the practice of law in this state is to ensure the proper functioning of the state's judicial system and to protect the public from misconduct by attorneys. *See* SCR ch. 21 Preamble.[6] In the context of reinstatement proceedings, this occurs by analyzing whether the attorney seeking reinstatement has demonstrated that he/she has the necessary good moral character to practice law in this state and that his/her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest. SCR 22.31(1). Admittedly, these are not quantifiable calculations. Thus, although this court makes the ultimate

---

[6] The Preamble to SCR ch. 21 states: "The lawyer regulation system is established to carry out the supreme court's constitutional responsibility to supervise the practice of law and protect the public from misconduct by persons practicing law in Wisconsin."

decision on whether to reinstate the license of any attorney, the referee's findings are important to the process because the referee is able to view the petitioning attorney and other witnesses in person and to assess the petitioner's remorse for past misconduct and commitment to avoiding further misconduct. In the present case the referee was clearly convinced that Attorney Washington is genuinely remorseful for her past misconduct and will be loathe to commit future misconduct. This assessment, based upon the referee's firsthand view of Attorney Washington's testimony at the reinstatement hearing, weighs heavily in favor of Attorney Washington's petition.

¶ 31. There are, however, some troubling issues connected with Attorney Washington's reinstatement petition. First, this is not the first time that Attorney Washington has been convicted for criminal conduct. Her first convictions, however, were in 1979, now nearly 30 years ago, prior to her becoming an attorney. Thus, the fact of these 1979 convictions has limited relevance to determining her fitness to practice law in 2008. Moreover, Attorney Washington was subsequently pardoned for this conduct. While that fact does not eliminate the 1979 convictions from our consideration, it does lessen to some degree the amount that those convictions should weigh against Attorney Washington in the present reinstatement proceeding.

¶ 32. In a similar vein, it is worthwhile to note that the criminal activity that led to this suspension of her license to practice law in Wisconsin did not directly involve the practice of law. Rather, it involved a matter in her personal life, her obligation to report her income accurately and to pay income taxes. Although criminal convictions about personal matters can certainly reflect adversely on a lawyer's honesty, trustworthiness or

fitness as an attorney and can merit a suspension of the lawyer's license, *see* SCR 20:8.4(b), such convictions do not always render an individual permanently unfit to practice law. *See, e.g., In re Disciplinary Proceedings Against Meagher,* 2004 WI 75, 272 Wis. 2d 247, 681 N.W.2d 145 (reinstatement granted following six-month suspension due to criminal conviction for violating federal wire wagering law); *In re Disciplinary Proceedings Against Penn,* 2002 WI 5, 249 Wis. 2d 667, 638 N.W.2d 287 (reinstatement granted following two-year suspension due to criminal convictions for six misdemeanor drug offenses). We think that is the case here, especially considering Attorney Washington's lack of prior discipline and her remorseful acceptance of responsibility for her misconduct.

¶ 33. Attorney Washington's failure to list the October 2006 real estate proceeds as income and to identify certain collection actions as pending litigation on her reinstatement questionnaire, while undeniably somewhat careless, do not appear to warrant keeping Attorney Washington from resuming the practice of law. As to the real estate proceeds, the referee notes that the OLR appeared satisfied with Attorney Washington's explanation that the funds were never truly in her possession. The OLR has not appealed from the referee's report to dispute this statement.

¶ 34. Similarly, while Attorney Washington should have been more careful to investigate and list all of the pending lawsuits in which she was a party, the ones she failed to list were collection cases in which she was a plaintiff. It is difficult to infer a sinister motive for hiding lawsuits in which Attorney Washington was seeking to collect funds owed to her. The referee found that this failure to list the collection actions was inadvertent and technical, and due partly to the nature of

the arrangement between Attorney Washington and the attorney who handled the collection matters for her. The OLR also did not challenge this finding by filing an appeal, and we have no reason to overturn it.

¶ 35. As to the A.A. and T.S. representations, we agree with the referee that while Attorney Washington's handling of their postconviction motions and her failure to notify them of her pending suspension were unacceptable, those matters are not sufficient to keep Attorney Washington out of the practice of law indefinitely. The referee also notes that the time period within which Attorney Washington was to wind up her practice before the summary suspension was relatively short. While this does not excuse Attorney Washington's conduct on the A.A. and T.S. matters, it does mitigate the severity of her deficiencies.

¶ 36. Against these two relatively minor matters occurring during a period of personal stress when facing criminal penalties and a pending suspension of her license, we weigh a career spanning more than 17 years prior to her summary suspension with no previous discipline. In that balance, the 17 years of practice without incident provide a greater indication of Attorney Washington's ability and moral character to zealously represent clients in conformance with the Rules of Professional Conduct.

¶ 37. We turn to the issue of Attorney Washington's client trust account records. First, it should be noted that any deficiencies in her records relate to the time when she was still practicing and not to the period of her suspension. Additionally, the OLR has not filed a complaint relating to any trust account matters. Moreover, while Attorney Washington did not fully comply with the requirement of maintaining general and client ledgers, she did apparently prepare and

maintain some form of documentation to show the source and disbursement of client trust funds. For example, when a personal injury case resolved, Attorney Washington would prepare a settlement summary that did show the amount of the total proceeds and how those proceeds were distributed. The proceeds were then disbursed immediately.

██

¶ 38. While Attorney Washington again should clearly have been more careful in maintaining the detailed records required by the client trust account rule, SCR 20:1.15, it is important in the context of this reinstatement proceeding to note that there is no indication that Attorney Washington ever misappropriated any client funds. As the referee noted, nothing about the trust account recordkeeping deficiencies suggests dishonesty or implies that Attorney Washington placed client funds at risk. Consequently, we agree with the referee's conclusion that the client trust account matters, while not insignificant, do not require the denial of Attorney Washington's reinstatement petition. We also agree with the referee, however, that the need for complete and accurate client trust account records must be impressed upon Attorney Washington. Accordingly, we will condition Attorney Washington's reinstatement on her providing full trust account records to the OLR on a quarterly basis for a period of two years following her reinstatement. This will adequately ensure that Attorney Washington understands her client trust account obligations under the Rules of Professional Conduct and acts in conformity with those standards. This will also protect the public from any potential harm arising from Attorney Washington's handling of client funds.

¶ 39. Finally, we conclude that Attorney Washington should be required to pay the full costs of this reinstatement proceeding. After the OLR filed its statement of costs, Attorney Washington requested an itemization of the requested costs and stated that she was objecting generally to the amount of the costs subject to her review of the itemization. The OLR filed and served the requested itemization, but Attorney Washington did not file any further objection. Her initial objection did not explain, with specificity, the reasons for her objection and did not state what she considered to be a reasonable amount of costs. *See* SCR 22.24(2) ("A respondent who objects to a statement of costs must explain, with specificity, the reasons for the objection and must state what he or she considers to be a reasonable amount of costs."). Because Attorney Washington's initial objection is clearly insufficient and could even be deemed to have been withdrawn since no objection was lodged to the itemized list of costs, we find no reason to deviate from our general policy to impose the full amount of costs on the individual attorney. *See* SCR 22.24(1m).[7]

¶ 40. IT IS ORDERED that Hazel J. Washington's license to practice law in Wisconsin is reinstated, effective immediately, upon the specific condition that she provide to the Office of Lawyer Regulation on a quarterly basis for the two years following her reinstatement complete and accurate client trust records in compliance with SCR 20:1.15. If Attorney Hazel J.

---

[7] SCR 22.24(1m) provides, in pertinent part, "The court's general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation, upon the respondent."

Washington fails to provide such records as required above, the Office of Lawyer Regulation is directed immediately to inform this court of that fact and to request further appropriate action from this court.

¶ 41. IT IS FURTHER ORDERED that within 60 days of the date of this order Hazel J. Washington shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of her inability to pay the costs within that time, the license of Hazel J. Washington to practice law in Wisconsin shall be suspended until further order of the court.

¶ 42. LOUIS B. BUTLER, JR., J., did not participate.