2003 SD 145

**CITY OF FREDERICK, South Dakota, Appellant,**

v.

**Gary SCHLOSSER and South Dakota Department of Labor Unemployment Insurance Division, Appellees.**

No. 22754.

Supreme Court of South Dakota.

Considered on Briefs Oct. 6, 2003.

Decided Dec. 17, 2003.

Jason A. Campbell of Spiry & Frohling, Britton, SD, for appellant.

Drew C. Johnson, Special Assistant Attorney General, Department of Labor, Aberdeen, SD, for appellee, South Dakota Department of Labor Unemployment Insurance Division.

KONENKAMP, Justice.

[¶ 1.] In this appeal, we must determine whether any portion of unemployment benefits are chargeable to a concurrent employer whose employee works both part-time and "on call" for additional work. Because we conclude that the Department of Labor (DOL) misconstrued ARSD 47:06:04:05 and that the employer was chargeable for some benefits but not the amount determined by the Department, we reverse and remand.

### Background

[¶ 2.] Gary Schlosser began working for the City of Frederick in 1996. The city is classified as a reimbursing employer. Schlosser performs two distinct sets of duties. First, he works part-time on a routine basis. As consideration for performance of these duties, he is guaranteed wages of $1500 per year.

[¶ 3.] Second, he performs additional duties for the city. As consideration for these duties he is paid $7.50 per hour. There is no dispute that Schlosser's agreement with the city remains in place. The amount of additional duties that Schlosser performs fluctuates with the seasons. He flushes the city fire hydrants every spring and fall. Dependent on the weather, he may flush the hydrants later or earlier. Nevertheless, the duties must be performed bi-annually, and he collects relatively the same amount of income whenever those duties are performed. The city also employs Schlosser to mow during the summer. He mows the baseball field, the city parks, ditches, and lagoons. Naturally, those activities are dependent on the weather, but must be performed seasonally. The performance of these additional duties generally causes a spike in the number of additional hours Schlosser spends working in the summer months.

[¶ 4.] Third, Schlosser provides additional services when the need arises. These duties include: clearing city sewer lines when they become blocked, fixing broken water mains and sewer lines, replacing damaged meters, road repairs, curb and gutter repairs, and other general maintenance functions. Although weather conditions can affect the performance of these duties, many other factors may also contribute to the necessity of these duties. Thus, these responsibilities may or may not arise annually and are not scheduled. They are simply performed when necessary.

[¶ 5.] In 1999, while continuing his employment with the city, Schlosser also began working for an asphalt company. He was employed by that company until November 2001, at which time he was laid off. As a result of losing his job at the asphalt company, he filed a claim for unemployment insurance benefits. In response to a DOL Determination Notice stating that Schlosser's benefits were fully chargeable to the City of Frederick, the city requested a hearing. The City claimed it should not be charged for any of Schlosser's benefits because it was a concurrent employer. As a result of that hearing, the administrative law judge (ALJ) concluded that the city was a concurrent employer in regard to those duties for which Schlosser was paid the guaranteed amount of $1500. The ALJ also concluded that all other additional duties for which Schlosser was paid $7.50 an hour were on-call duties, and therefore, the city was chargeable for those amounts. Without elaboration, the circuit court affirmed.

[¶ 6.] The City of Frederick appeals on four separate issues. We consolidate

those issues into a single question: Whether the ALJ erred in concluding that only $1,500 per year of Schlosser's income from the city should be treated as coming from concurrent employment?

### Analysis and Decision

 [¶ 7.] Our review of administrative appeals is governed by SDCL 1–26–36, which provides:

> The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> 1. In violation of constitutional or statutory provisions;
>
> 2. In excess of the statutory authority of the agency;
>
> 3. Made upon unlawful procedure;
>
> 4. Affected by other error of law;
>
> 5. Clearly erroneous in light of the entire evidence in the record; or
>
> 6. Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15–17.

Under our standard of review, we give no deference to the legal conclusions rendered by either the ALJ or the circuit court. *Kurtz v. SCI*, 1998 SD 37, ¶ 9, 576 N.W.2d 878, 882 (citation omitted). Interpretation of statutes and administrative rules present a question of law, and thus they are fully reviewable. *Esling v. Krambeck*, 2003 SD 59, ¶ 6, 663 N.W.2d 671, 675.

 [¶ 8.] ARSD 47:06:04:05 provides:

> If a claimant is currently working for a base period employer at the time a new claim for benefits is filed, the claimant's weekly benefit amount and minimum base period wages, as required by SDCL 61–6–7, shall be computed using total base period wages from all base period employers. *The claimant's maximum benefit amount does not include, and the current employer is not chargeable for, benefits based on wages from the current employer if the employer continues to provide employment to the same extent as was provided during the base period and the employment provided is not "on-call" employment for which no work schedule is established. Employment which provides generally the same work schedule on a continuing basis but offers employees the option of accepting available work is not "on-call" employment.*
>
> If the claimant later separates from the current employer or the employer fails to provide employment to the same extent as provided during the base period, benefits based on such employment shall be included in the maximum benefit amount and employer charges shall be determined under SDCL 61–5–29 or 61–5–29.1.

(Emphasis added.) * *See generally* SDCL 61–6–6 to 61–6–8.

---

* "Base period," is defined by statute as "the first four out of the last five completed calendar quarters immediately preceding an individual's benefit year." SDCL 61–1–1(2). "Benefit year," is defined as "the one-year period beginning with the day on which a

[¶ 9.] We begin our analysis by noting that the administrative rules do not prohibit a finding that an employer may be classified as both concurrent and non-concurrent. The rules do not suggest that an employer must be either chargeable for all benefits or not chargeable for any benefits. It is the calculation of benefits a claimant is entitled to that is significant here.

[¶ 10.] We must next ascertain whether the ALJ correctly determined what portion of benefits may be charged against the city. This requires a more detailed look into the pertinent language of ARSD 47:06:04:05. The rule provides that a current employer may not be charged for "benefits based on wages from the current employer." There are two conditions that must be met for an employer to qualify for this exemption. Under the first condition, an employer must continue "to provide employment to the same extent as was provided during the base period." Under the second condition, the employment may not be " 'on-call' employment for which no work schedule is established." The first condition must exist, and the second condition must not exist.

[¶ 11.] While we believe the first condition requires no further analysis, the second condition is not as straightforward. The second condition only applies if both elements of the condition are met. First, the employment must be "on-call." Second, if a work schedule is established for the "on-call" employment, the condition will not apply. The rule does not attempt to define "on-call" employment. Rather, it provides only what "on-call" employment is not. Such a distinction is of little help in determining what "on-call" employment is. Likewise, the rule gives no further guidance on what might constitute an established work schedule. Thus, it is left to us to bring some meaning to the terms within the rule.

[¶ 12.] We think it is reasonable to assume that duties conducted in the course of an employment relationship that are performed on an "as needed" basis can be fairly classified as "on-call" employment. Further, we believe that an employer may show that a work schedule exists, despite the fact that the day on which the work is to be done is not specified. We accept that a work schedule may exist although the execution of those duties depends on other factors, such as the weather. It suffices if those duties are regularly scheduled or seasonally required.

[¶ 13.] The ALJ concluded, "Any wages and earning from the [city] that exceed [guaranteed wages] should be treated as wages earned from on-call employment and the [city] can presently be charged despite the continuing employment relationship." In support of this conclusion, the ALJ found:

> The Claimant flushes the city fire hydrants each spring and fall and is paid an hourly wage for this activity. The Claimant mows the city parks, ditches, and lagoons throughout the warmer months as needed. It varies when these duties are carried out. The flushing of the hydrants takes place every year, twice a year, and is relatively the same amount of income, but the dates are affected by weather. The mowing varies greatly as to when and how much depending on various factors such as the weather (how wet and how warm it is).
>
> The Claimant is also clearly an on-call employee for the Employer and performs various duties throughout the

claimant files a valid new claim for benefits, or the one-year period beginning with the day on which a claimant files a valid new claim

after the termination of his last preceding benefit year." SDCL 61–1–1(3).

year when needed at a rate of $7.50 per hour. For example: clearing city sewer lines when they become blocked, fixing broken water mains and sewer lines, replacing damaged meters, road repair, curb and gutter repair, and various other city maintenance type jobs.

Some months the Claimant only makes his guaranteed wages, others he may more than double his wages through his on-call employment with the Employer. In coming to this conclusion, the ALJ reasoned that the guaranteed wages were "easily separable [from the hourly wages] and should be treated as coming from concurrent employment." Hence, the ALJ chose to draw a defining line between hourly wages and guaranteed wages.

[¶ 14.] While we agree that some duties performed for which an hourly wage is earned could be classified as on-call duties, we reject the ALJ's conclusion that only those duties performed for which Schlosser received a guaranteed wage could be classified as being scheduled. Apparently, the ALJ thought that unless dates for duties were specified, a work schedule was not in place. A schedule of work may be established even though that schedule necessarily depends on the weather. A work schedule may be annual or weekly depending on the circumstances.

[¶ 15.] In addition, the ALJ placed too much emphasis on the disparity of Schlosser's wages between summer and winter months. The majority of Schlosser's "as needed" duties are performed in the summer, not the winter. This is to be expected. Had Schlosser's additional duties included snow removal in the winter months, which he testified was not part of his responsibilities, the disparity would have been much less. But adding additional duties in the winter would do nothing to change the nature of the duties performed in the summer. Using the ALJ's ratio-

nale, including snow removal duties would have resulted in adding those wages to the amount chargeable to the city. There is no requirement that a claimant's wages be equally distributed throughout the year. We agree that certain of Schlosser's "as needed" duties were not scheduled. Those duties depended on many factors, and may or may not be required annually or seasonally. Therefore, there could be no schedule. A clogged sewer line and a water main break are not scheduled events. It is the maintenance for these types of events that are chargeable as "on call" duties under the rule.

[¶ 16.] Our decision is based on the policy that an employer who contributes to the unemployed status of a claimant should rightfully be responsible for the payment of unemployment benefits. There is simply no reason for the city to be chargeable for duties that must be performed and that Schlosser will perform. Schlosser flushes the city fire hydrants twice per year. The grass on the city's property will grow, and Schlosser will mow it. The schedule for when Schlosser flushes the hydrants and mows the grass necessarily depends on the weather, but a schedule exists. This policy is further reflected in ARSD 47:06:04:01 and 47:06:04:03. Under those provisions, a seasonal employer is not chargeable for benefits if a claimant's unemployed status occurs outside of that season in which the employer normally employs the claimant. However, if the claimant's unemployed status occurs during those seasons in which the claimant is normally employed by the seasonal employer, then the seasonal employer is chargeable.

[¶ 17.] Our decision does not preclude a later finding by the DOL that an employer has failed "to provide employment to the same extent as provided during the base period." The second paragraph of ARSD 47:06:04:05 provides for such a later find-

ing. Here, at least some of those additional duties performed by Schlosser are scheduled. Therefore, we reverse the decision in that it concluded that all employment for which Schlosser received hourly wages was not scheduled and remand for further proceedings.

[¶ 18.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.