#23648-a-JKM

**2006 SD 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DAN IRVINE,                                        Appellant,

    v.

CITY OF SIOUX FALLS,                    Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JON R. ERICKSON
Judge

\* \* \* \*

THOMAS K. WILKA of
Hagen, Wilka & Archer
Sioux Falls, South Dakota            Attorneys for appellant.

ALLEN J. EIDE
Chief Assistant City Attorney        Attorney for respondent
Sioux Falls, South Dakota            and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 9, 2006

OPINION FILED **03/08/06**

#23648

MEIERHENRY, Justice.

[¶1.] Daniel Irvine (Irvine), an employee of the Sioux Falls Fire Rescue (SFFR), was demoted and suspended for insubordination. The disciplinary action was upheld by the Sioux Falls Civil Service Board (Board) and the circuit court. We affirm.

## FACTS

[¶2.] Irvine, a 27-year veteran of the SFFR, had worked as a Fire Captain since early 1995. In late 2001, Irvine went on light duty status because of a non-work related injury. In late July 2002, Irvine returned to full duty status and resumed his position as a Fire Captain. At the end of September 2002, Division Chief Corky Miles (Miles) sent an e-mail to several employees, including Irvine, to notify them of a mandatory training meeting on October 1, 2002. Irvine failed to attend the meeting. He claimed he did not receive the e-mail notification regarding the meeting. Upon investigation, SFFR determined that Irvine purposely configured his computer's e-mail program to divert all messages from Miles from the inbox into a separate file in order to ignore them. SFFR found that Irvine's actions constituted insubordination and, as a result, suspended and demoted him. Irvine appealed the disciplinary action of SFFR to the Board. The Board conducted a review hearing. The Board entered findings of fact and conclusions of law affirming the disciplinary action. Irvine appeals and raises the following issue:

## ISSUE

[¶3.] Whether the Board erred when it determined that the City proved by conclusive evidence that Irvine's demotion was for good cause.

-1-

**STANDARD OF REVIEW**

[¶4.]     Our review of the Board's decision is governed by SDCL 1-26-36.

SDCL 9-14-14; *see also* Schlumbohm v. City of Sioux Falls, 2001 SD 74, ¶7, 630

NW2d 93, 95.  We must "give great weight to the findings made and inferences

drawn by [the board] on questions of fact."  SDCL 1-26-36.  In reference to the civil

service board's factual findings, we have said that "we do not 'judge witness

credibility, a matter left to those presiding first hand.'"  *Schlumbohm*, 2001 SD 74,

¶12, 630 NW2d at 96 (citing Green v. City of Sioux Falls, 2000 SD 33, ¶16, 607

NW2d 43, 47).  We give no deference to the legal conclusions rendered by either the

board or the trial court.  City of Frederick v. Schlosser, 2003 SD 145, ¶7, 673 NW2d

283, 285.  Whether the facts establish just cause for discipline is a matter of law

that is fully reviewable.  *Schlumbohm*, 2001 SD 74, ¶12, 630 NW2d at 96 (citing

*Green*, 2000 SD 33, ¶21, 607 NW2d at 48).  The interpretation of an ordinance also

presents a question of law that we review de novo.  City of Marion v. Rapp, 2002 SD

146, ¶5, 655 NW2d 88, 90.  Pursuant to statute, a civil service board's decision can

only be reversed if it is:

> (1)   In violation of constitutional or statutory provisions;
> (2)   In excess of the statutory authority of the agency;
> (3)   Made upon unlawful procedure;
> (4)   Affected by other error of law;
> (5)   Clearly erroneous in light of the entire evidence in the record; or
> (6)   Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

SDCL 1-26-36.

**DECISION**

[¶5.]     Irvine contends that the City failed to produce conclusive evidence that his suspension and demotion by SFFR was made in good faith for cause. The Sioux Falls City Ordinances govern the City's personnel decisions. Ordinance 30-45 provides that an employee may be suspended, discharged, or demoted for just cause. Ordinance 30-46 states that just cause exists when an employee "[h]as been guilty of acts constituting insubordination or of any conduct unbecoming an officer or employee of the city."

[¶6.]     According to Ordinance 30-48, after an employee has been removed, discharged, suspended, or demoted, the employee may appeal the action and request a hearing before the Board.[1] The Board investigates the action to determine if it should be affirmed. The Board's authority to review the action is set forth by Ordinance 30-50 as follows:

> After an investigation into the discharge, removal, suspension or reduction of a person in the civil service, ***the civil service board may, if in its estimation the evidence is conclusive, affirm the removal,*** or if it shall find that the removal, suspension, or demotion was made for race, color, creed, sex, ancestry, national origin, disability or political or religious reasons or ***was not made in good faith for cause***, shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which such person was removed, suspended, demoted, or discharged. Such reinstatement may be retroactive with pay from the time of such removal, suspension demotion, or discharge. The board upon such investigation, in lieu of affirming the removal, suspension, demotion, or discharge, may modify the order of removal,

---

1.     Under South Dakota law, municipalities may adopt ordinances which establish a civil service system for municipal employees and provide for a civil service board which reviews personnel decisions. SDCL 9-14-14. The City of Sioux Falls has established such a system pursuant to that authority.

suspension, demotion or discharge by directing a suspension
without pay for a given period and subsequent restoration of
duty or demotion in classification, grade, or pay.  The findings of
the board shall be certified in writing to the director, and shall
be forthwith enforced by such officer.

(Emphasis added).

[¶7.]		In order to review the Board's decision, we must first determine the quantum of proof required by the ordinance.  The ordinance requires the Board to investigate the action and allows the Board to affirm the action "if in its estimation the evidence is conclusive."  Unfortunately, the ordinance does not define that phrase.  Irvine argues that "conclusive evidence" is greater than "preponderance of the evidence" and equivalent to "beyond a reasonable doubt."  Citing to Black's Law Dictionary, Irvine contends that conclusive evidence is evidence "so strong and convincing as to overbear all proof to the contrary and establish the proposition beyond any reasonable doubt."

[¶8.]		When a term is not defined in an ordinance, we interpret the term according to its usual and ordinary meaning.  *In re* Frawley Planned Unit Dev., 2002 SD 2, ¶6, 638 NW2d 552, 554.  The usual and ordinary meaning of "conclusive" is "serving to put an end to doubt, question, or uncertainty; decisive."  The American Heritage Dictionary 305 (2d college ed 1982).  When we have referred to the term "conclusive evidence," we have usually done so in the context of a presumption of evidence.  For example, when analyzing the constitutionality of legislation, we employ both "the 'enrolled bill' rule which holds the enrolled bill as *conclusive evidence* of its proper enactment . . . [and] the 'modified enrolled bill' rule which holds an enrolled bill as *conclusive evidence* of proper enactment except as to

constitutionally mandated journal entries which are specifically questioned."  Ind. Cmty. Bankers Ass'n v. State, 346 NW2d 737, 742-43 (SD 1984) (citations omitted) (emphasis added).  Statutes use the phrase "conclusive evidence" in the same manner.  *See, e.g.*, SDCL 7-3-8 (providing that when new counties are established, a report of assets and liabilities filed by the auditor-general "shall be *conclusive evidence* of the amounts due from one county to the other or others"); SDCL 10-11-16 (stating that a postmark shall be conclusive evidence regarding the timeliness of an appeal of assessment decisions); SDCL 16-19-58 (establishing that a certificate or record of a conviction is conclusive evidence of the commission of a crime for professional purposes of attorney discipline).

[¶9.]        While "conclusive evidence" has been used in the context of evidentiary presumptions, the term has not been defined as a standard of proof.  The analogous phrase, "clear and convincing evidence," has been defined as "'more than a mere preponderance but not beyond a reasonable doubt.'"  *In re* Setliff, 2002 SD 58, ¶13, 645 NW2d 601, 605 (citations omitted).  Evidence is "clear and convincing" if it is "'so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'"  *In re* Zar, 434 NW2d 598, 602 n7 (citations omitted); *see also* SD Pattern Jury Instruction (Criminal) 2-5-4.  On the other hand,

> A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act.  Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it.  However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

State v. Webster, 2001 SD 141, ¶9, 637 NW2d 392, 395; *see also* SD Pattern Jury Instruction (Criminal) 1-6-3.

[¶10.]     Generally, the burden of proof for administrative hearings is preponderance of the evidence. *Zar*, 434 NW2d at 602. In license revocation proceedings, however, we have required the higher standard of clear and convincing evidence. *See, e.g.*, *Setliff*, 2002 SD 58, ¶13, 645 NW2d at 605; *Zar*, 434 NW2d at 602. In this case, the City enacted an even higher standard for itself by requiring "evidence that is conclusive"—that is, evidence that "serv[es] to put an end to doubt, question, or uncertainty" or that is "decisive." In light of the ordinary meaning, we agree that "conclusive evidence" requires a higher quantum of proof than "preponderance of the evidence" or even "clear and convincing evidence." The ordinance requires proof that is closer to proof beyond a reasonable doubt.

[¶11.]     In this case, the Board recognized and applied the appropriate burden of proof. It specially noted that "[t]he City of Sioux Falls has the burden of proving *by conclusive evidence* that the suspension and demotion of Daniel Irvine was made in good faith and for just cause." (emphasis added). The board then concluded that "[t]he City [had] met its burden."

[¶12.]     Although the City's burden of proof requires the Board to find conclusive evidence of cause, our standard of review of the Board's decision is governed by SDCL 1-26-36. Consequently, we review the Board's findings of fact under a clearly erroneous standard. Although Irvine argues that some of the evidence refutes the Board's findings, he is unable to show that any of those findings are clearly erroneous. A finding is clearly erroneous when we are left with

a definite and firm conviction that a mistake was made. Deuter v. S.D. Hwy. Patrol, 330 NW2d 533, 535-36 (SD 1983). The Board made thirty-one detailed findings of fact. Irvine takes issue with several of the Board's findings.

[¶13.] One of the Board's findings refers to Irvine's dishonesty in regard to the e-mail notification. Irvine claims his superiors were wrong in not believing him. Irvine contends he did not create the rule on his computer which diverted Miles' e-mails to an unread folder. Furthermore, if he did create the rule, Irvine argues that he did so inadvertently due to his incompetence with computers. At the hearing, he provided his version of how he may have accidentally created computer procedures that resulted in the e-mail diversion. He explained that a series of "misclicks" in his attempt to "create," "insert," and "organize" his desktop folders and documents may have caused the problem.

[¶14.] Other evidence in the record undercut Irvine's explanation. Irvine may very well have been a less than competent e-mail user in February 2002. Nevertheless, shortly after he attended the March 2002 training class, the e-mails that he received from his supervisor Miles ended up—unread—in a folder in his inbox. At that training, the instructor covered the use of certain e-mail rules and specifically joked that an e-mail user could create a rule which would send e-mails from a boss to the deleted items folder. Beginning three days after the training class, Miles' e-mails to Irvine were diverted from the inbox to a folder in Irvine's e-mail program. None of the diverted e-mails were ever opened or read. All of Miles' e-mails to Irvine continued to be diverted up to the time Irvine was suspended. The only evidence indicating that Irvine was not intentionally avoiding Miles' e-mails is

Irvine's own testimony.  The import of that testimony, however, depends on Irvine's credibility, a determination we leave to the Board.  Given its findings, the Board apparently rejected Irvine's explanation.

[¶15.]       Irvine also challenges the Board's determination that he had an attitude problem with authority.  The evidence, however, established that Irvine exhibited long and  continuous disrespect of SFFR's management personnel.  Year after year, Irvine's evaluations depicted a man who was a proficient firefighter, but an unmanageable employee.  Irvine's supervisors repeatedly encouraged him to "be more cooperative, courteous, and nondisruptive to the organization."  One evaluation stated that Irvine's "unwillingness to handle interaction with chief officers in a tactful and respectful way [was] unacceptable behavior."

[¶16.]       The Board specifically found that Irvine was "openly hostile" to Miles after Miles was promoted.  Rather than calling Miles by his preferred name, "Corky," Irvine referred to Miles as "Sam," an acronym for "Suck Ass Miles." According to Miles, he and Irvine "got along" until Miles was promoted.  A similar change in Irvine's attitude was noticed by Fire Chief Donn Hill (Hill).  Hill characterized his relationship with Irvine as good until Hill became part of management, at which time the relationship immediately became negative.

[¶17.]       Thus, the evidence established that Irvine had a history of disrespecting management, particularly Miles, that Irvine's e-mail program was operating a rule which diverted all e-mails from Miles to a separate folder, that Miles' e-mails were automatically diverted without being read, and that just prior to the date of the first diverted e-mail, Irvine attended a computer training program

which taught the participants how to use rules and during which the instructor joked about avoiding the boss's e-mails. The evidence presented to the Board was not without conflict, but even with the City's "conclusive evidence" burden of proof , we cannot say that the factual findings of the Board were clearly erroneous in light of all the evidence. The facts established by conclusive evidence that just cause existed for Irvine's suspension and demotion.

[¶18.]     Affirmed.

[¶19.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.