In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST James M. SCHOENECKER, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

James M. SCHOENECKER, Respondent.

Supreme Court

*No. 2011AP48–D.—Decided July 15, 2011.*

2011 WI 76

(Also reported in 804 N.W.2d 686.)

¶ 1. PER CURIAM. We review a stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney James S. Schoenecker pursuant to SCR 22.12. In the stipulation, Attorney Schoenecker agrees that he committed multiple acts of professional misconduct. Although the stipulation lists seven counts, there are actually more than seven violations of the Rules of Professional Conduct for Attorneys because a number of the counts contain multiple violations of a single rule. The stipulation requests that the court impose a three-year suspension as discipline for Attorney Schoenecker's professional misconduct. There is no request in this matter for a restitution award nor is there a request in the stipulation for the imposition of costs against Attorney Schoenecker.

¶ 2. After fully reviewing the matter, we approve the stipulation and impose the requested three-year suspension. The professional misconduct committed by Attorney Schoenecker is quite disturbing and calls for a substantial suspension. We also note that this suspension will require Attorney Schoenecker to undergo the formal reinstatement procedure in SCRs 22.29–22.33, in which he will be required to demonstrate, among other things, that he has a proper understanding of and attitude toward the standards that are imposed upon members of the bar in this state and that he will act in conformity with those standards. *See* SCR 22.29(4)(f).

¶ 3. Attorney Schoenecker was admitted to the practice of law in Wisconsin in September 2004. He has not previously been the subject of professional discipline.

254

¶ 4. Much of Attorney Schoenecker's misconduct relates to his relationship (both personal and professional) with M.F. In 2007 Attorney Schoenecker and M.F. were engaged to be married. In December of that year they opened a joint checking account. M.F. also obtained a $100,000 home equity line of credit and then made a loan of $48,500 to Attorney Schoenecker. In exchange for the loan, Attorney Schoenecker executed a promissory note, in which he promised to repay the loan with interest.

¶ 5. Two days after making the loan to Attorney Schoenecker, M.F. learned that Attorney Schoenecker had made cash withdrawals from her checking account[1] at a casino. Those withdrawals had resulted in a $1,500 negative balance in the account. This discovery apparently caused M.F. to close the joint checking account and to end her engagement to Attorney Schoenecker.

¶ 6. Attorney Schoenecker repaid only $26,500 of the loan balance. With interest, he still owed M.F. approximately $23,000. At some point in 2009 M.F. filed a collection action against Attorney Schoenecker. The parties ultimately reached a settlement, pursuant to which Attorney Schoenecker paid the total sum of $32,106.36 to M.F. as part of a full resolution of the financial issues between the individuals.[2]

---

[1] The stipulation is not clear as to whether the withdrawals were made from the joint checking account the two had recently established or from a separate checking account owned solely by M.F.

[2] Although the stipulation does not note this fact, the court takes judicial notice that the circuit court docket record for the action brought by M.F. against Attorney Schoenecker shows that the final dismissal of the case did not occur until January 2011.

¶ 7. In March 2008, between the end of the parties' engagement and M.F.'s filing of the collection lawsuit, Attorney Schoenecker became an associate at the Clair Law Offices (Clair law firm) in Lake Geneva. It appears from the stipulation that prior to this time Attorney Schoenecker had been representing M.F. in a dispute with a contractor who had performed some work on a property owned by M.F. Attorney Schoenecker informed the law firm that he was representing M.F. and sent her a Legal Representation and Fee Agreement letter on behalf of the Clair law firm. M.F. was then considered a client of the firm. Ultimately, after the contractor filed a lawsuit against M.F. in small claims court, Attorney Schoenecker withdrew as M.F.'s attorney.

¶ 8. Attorney Schoenecker provided legal representation to M.F. at the same time as he was a debtor to her pursuant to the December 2007 loan and promissory note. Attorney Schoenecker did not obtain M.F.'s written consent to waive any actual or potential conflict of interest in the legal representation caused by the creditor/debtor relationship.

¶ 9. The policy of the Clair law firm was that senior attorneys of the firm had to approve bills before they were sent to clients. Attorney Schoenecker, however, sent out two invoices to M.F. in September and October 2008 without obtaining the necessary approval. The total amount shown on the bills was $13,523, but a substantial number of the entries on those invoices were fraudulent. The OLR's memorandum in support of the stipulation alleges that Attorney Schoenecker's submission of these inflated invoices to M.F. was an attempt to offset the remaining amount that he owed M.F. from the December 2007 loan.

¶ 10. In addition to attempting to defraud M.F. through the invoices, Attorney Schoenecker also en-

256

gaged in a pattern of attempted and completed thefts from her bank accounts. In December 2008 he obtained some of M.F.'s personal information without her consent and began attempting to withdraw money from a business account that she maintained.

¶ 11. Attorney Schoenecker used M.F.'s personal information to enter her business account without her permission and set up an online bill paying account. He changed the e-mail address on the account so that M.F. would not receive notice of any checks he intended to draw on her account.

¶ 12. Attorney Schoenecker first generated two checks in December 2008 that he made payable to himself in the amounts of $950 and $450. He was able to cash the $950 check, but his attempt to cash the $450 check was apparently unsuccessful. Attorney Schoenecker tried to cash a third check in the amount of $1,750 in January 2009, but the check did not clear due to insufficient funds in the account. Attorney Schoenecker did not have M.F.'s consent to generate or cash any of these checks.

¶ 13. Attorney Schoenecker was charged in two separate criminal proceedings arising out his actions concerning M.F. In a Walworth County proceeding, *State v. Schoenecker,* Case No. 2009CF250, the state charged Attorney Schoenecker with two counts of felony identity theft for the purpose of obtaining money for his attempts to withdraw money from M.F.'s business account. On January 27, 2010, pursuant to a plea agreement, Attorney Schoenecker pled guilty to one felony count of identity theft. *See* WIS. STAT. § 943.201(2)(a). The second count of identity theft was dismissed and read in for sentencing purposes. The Walworth County circuit court imposed two years of probation and ordered Attorney Schoenecker to pay restitution and court costs.

¶ 14. In a Waukesha County proceeding, *State v. Schoenecker,* Case No. 2009CF732, Attorney Schoenecker was charged with one count of felony forgery for creating the $1,750 check that he unsuccessfully attempted to cash in January 2009. On March 12, 2010, Attorney Schoenecker pled guilty to a reduced misdemeanor charge of Theft-Moveable Property (less than $2,500). The Waukesha County circuit court imposed and stayed a sentence of four months in jail and placed Attorney Schoenecker on probation for a period of one year. The circuit court also ordered Attorney Schoenecker to pay restitution to M.F., as well as court costs.

¶ 15. Attorney Schoenecker did not provide written notification of either of his convictions to the OLR or this court within five days. He has, however, paid all restitution amounts and court costs, except for $283.25 in costs in the Walworth County action, which amount is not due until January 2012.

¶ 16. In addition to his misconduct involving M.F., Attorney Schoenecker also set up his own separate law firm on the side while working as an associate attorney for the Clair law firm. He did not inform the Clair law firm of this fact. He did set up a client trust account for his separate practice, but he did not disclose the existence of this separate trust account in his Fiscal 2010 State Bar of Wisconsin Membership Dues and Supreme Court Assessments Statement.

¶ 17. The final part of Attorney Schoenecker's professional misconduct involves his own personal bankruptcy proceeding. On July 22, 2009, while M.F.'s collection action against him was pending and a few weeks after the two state criminal actions had been filed against him, Attorney Schoenecker filed a Chapter 7 bankruptcy petition. In his bankruptcy schedules Attorney Schoenecker claimed that he had become unemployed on June 30, 2009. He failed to disclose, however,

that he had also been operating a separate solo law practice apart from his prior employment with the Clair law firm. He disclosed only the income he had earned from the Clair law firm. He did not disclose any of the income he had received from his "side" practice. In addition to filing these inaccurate schedules, Attorney Schoenecker also falsely testified under oath at a meeting of creditors on August 31, 2009, that his bankruptcy filing was true and correct and did not need to be amended, except to correct the names of some creditors.

¶ 18. On January 12, 2010, the bankruptcy court granted Attorney Schoenecker a discharge in bankruptcy. After the U.S. Trustee learned of Attorney Schoenecker's practice of law on his own apart from the Clair law firm, the Trustee moved to revoke Attorney Schoenecker's discharge in bankruptcy on the ground that the bankruptcy had been gained through fraud. Attorney Schoenecker agreed to a stipulation to revoke his bankruptcy discharge in May 2010. In the stipulation, he acknowledged that he had testified falsely at the August 2009 meeting of creditors and in a subsequent deposition taken on October 20, 2009. He also admitted that his bankruptcy schedules had not been true because he had failed to disclose that he had received income from his private law practice during the six-month period prior to filing his bankruptcy petition. On the basis of the stipulation, the bankruptcy court did ultimately revoke Attorney Schoenecker's discharge in bankruptcy.

¶ 19. Although there is no indication in the stipulation filed in this court that he was ever criminally charged for violations of federal bankruptcy law, Attorney Schoenecker agrees that his conduct in the bankruptcy proceeding was a violation of 11 U.S.C. § 727(a)(4)(A), which, in turn, constituted a bankruptcy

crime under 18 U.S.C. § 152 for making a false oath or account in a bankruptcy proceeding.

¶ 20. On the basis of these facts, the parties' stipulation sets forth seven counts of professional misconduct. The first two counts relate specifically to Attorney Schoenecker's interactions with and representation of M.F. Count One alleges that by agreeing to represent M.F. while maintaining a creditor/debtor relationship with her without obtaining her informed consent, Attorney Schoenecker violated SCR 20:1.7(a).[3] Count Two alleges that Attorney Schoenecker violated SCR 20:1.5(a)[4] by sending invoices to M.F. for services that he did not perform and charging her fees she did not incur.

---

[3] SCR 20:1.7(a) states:

Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

[4] SCR 20:1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

260

¶ 21. Counts Three and Four involve aspects of the separate law practice that Attorney Schoenecker established while working as an associate for the Clair law firm. Count Three states that Attorney Schoenecker's 2010 dues statement failed to identify the client trust account that he had set up for his separate private law practice, in violation of SCR 20:1.15(i).[5] Count Four asserts that Attorney Schoenecker's establishment of a

---

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[5] SCR 20:1.15(i) states: Certification of compliance with trust account rules.

(1) Annual requirement. A member of the state bar of Wisconsin shall file with the state bar of Wisconsin annually, with payment of the member's state bar dues or upon any other date approved by the supreme court, a certificate stating whether the member is engaged in the practice of law in Wisconsin. If the member is practicing law, the member shall state the account number of any trust account, and the name of each financial institution in which the member maintains a trust account, a safe deposit box, or both, as required by this section. The state bar shall supply to each member, with the annual dues statement, or at any other time directed by the supreme court, a form on which the certification must be made.

(2) Trust account record compliance. Each state bar member shall explicitly certify on the state bar certificate described in par. (1) that the member has complied with each of the record-keeping requirements set forth in subs. (f) and (j)(5).

(3) Certification by law firm. A law firm shall file one certificate on behalf of the lawyers in the firm who are required to file a certificate under par. (1). The law firm shall give a copy of the certificate to each lawyer in the firm.

clandestine law practice while working as an associate attorney for the Clair law firm and his failure to disclose and to account for the fees he earned in the separate law practice constituted a breach of his fiduciary duty to the Clair law firm and a breach of his duty of honesty in his professional dealings with the firm, in violation of SCR 20:8.4(f).[6]

¶ 22. Count Five alleges that Attorney Schoenecker committed a host of criminal acts that violated SCR 20:8.4(b):[7] (1) misappropriating the personal information of M.F. and using that information to generate two checks payable to him from her business bank account; (2) hacking into M.F.'s business bank account; (3) generating a third check for $1,750 and attempting to cash it; (4) making false statements under oath in his bankruptcy petition and other bankruptcy documents; and (5) giving false testimony under oath in the bankruptcy proceeding.

¶ 23. Count Six similarly lists a number of statements made or actions taken by Attorney Schoenecker that involved dishonesty, fraud, deceit or misrepresenta-

---

(4) Suspension for non-compliance. The failure of a state bar member to file the certificate is grounds for automatic suspension of the member's membership in the state bar in the same manner provided in SCR 10.03(6) for nonpayment of dues. The filing of a false certificate is unprofessional conduct and is grounds for disciplinary action.

[6] SCR 20:8.4(f) states it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

[7] SCR 20:8.4(b) provides it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . ."

tion, in violation of SCR 20:8.4(c):[8] (1) sending fraudulent billing statements to M.F.; (2) using misappropriated personal information of M.F. in attempts to withdraw money from her bank account; (3) fraudulently entering M.F.'s bank account to withdraw money from the account; (4) establishing a solo private law practice while employed by the Clair law firm without disclosing such practice to his employer or providing an accounting of the legal fees earned in that solo practice; (5) failing to disclose the separate solo law practice or fees earned in that practice on his bankruptcy schedules; (6) failing to disclose the client trust account for the separate solo law practice on his bankruptcy schedules; (7) giving false testimony under oath at the meeting of creditors; and (8) giving false testimony under oath at a bankruptcy deposition that he had not opened a client trust account.

¶ 24. Finally, in Count Seven, Attorney Schoenecker agrees that his failure to notify the OLR and the clerk of this court of his convictions in the Walworth County and Waukesha County criminal actions constituted violations of SCR 21.15(5),[9] which is enforced via SCR 20:8.4(f).

_____

[8] SCR 20:8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[9] SCR 21.15(5) provides as follows:

> An attorney found guilty or convicted of any crime on or after July 1, 2002, shall notify in writing the office of lawyer regulation and the clerk of the Supreme Court within 5 days after the finding or conviction, whichever first occurs. The notice shall include the identity of the attorney, the date of finding or conviction, the offenses, and the jurisdiction. An attorney's failure to notify the office of lawyer regulation and clerk of the supreme court of being found guilty or his or her conviction is misconduct.

¶ 25. The stipulation states that Attorney Schoenecker fully understands the nature of the misconduct allegations against him and his right to contest those allegations. It also states that Attorney Schoenecker understands his right to the assistance of counsel and notes that Attorney Schoenecker has been represented by counsel during the disciplinary process. The parties further assert that the stipulation is not the product of plea-bargaining. Finally, Attorney Schoenecker represents that he is entering the stipulation knowingly and voluntarily.

¶ 26. The stipulation requests that the court impose the three-year suspension sought by the OLR as discipline for Attorney Schoenecker's professional misconduct. As support for a substantial suspension in this case, the OLR's memorandum in support of the stipulation cites a number of prior disciplinary decisions. *See, e.g., In re Disciplinary Proceedings Against George,* 2008 WI 21, 308 Wis. 2d 50, 746 N.W.2d 236 (suspension of four years and three months for criminal conduct involving, among other things, conspiracy to commit offenses involving federal program funds); *In re Disciplinary Proceedings Against Gral,* 2007 WI 22, 299 Wis. 2d 160, 727 N.W.2d 495 (three-year suspension for criminal conduct involving federal mail fraud); *In re Disciplinary Proceedings Against Webster,* 217 Wis. 2d 371, 577 N.W.2d 21 (1998) (two-year suspension for criminal conduct involving aiding and abetting the fraudulent concealment of his clients' property in a bankruptcy proceeding).

¶ 27. After reviewing the matter, we approve the stipulation and adopt the stipulated facts and legal conclusions of professional misconduct. Although the cases cited by the OLR are not precisely on point because of factual differences, we agree that a three-year suspen-

sion of Attorney Schoenecker's license to practice law in Wisconsin is an appropriate level of discipline in this case in light of his serious misconduct. Attorney Schoenecker engaged in a disturbing series of illegal and dishonest actions, which were designed to benefit him financially to the injury of his client, his law firm employer, and his creditors. As we noted at the beginning of this opinion, before he will be allowed to practice law again in this state, Attorney Schoenecker will need to demonstrate that, among other things, he has a proper understanding of and attitude toward the standards that are imposed upon members of the bar in this state and that he will act in conformity with those standards. *See* SCR 22.29(4)(f). We do not impose restitution, as the OLR did not make any such request. Finally, because Attorney Schoenecker entered into a comprehensive stipulation under SCR 22.12, thereby obviating the need for the appointment of a referee and a full disciplinary proceeding, we do not impose costs in this matter.

¶ 28. IT IS ORDERED that the license of James M. Schoenecker to practice law in Wisconsin is suspended for a period of three years, effective August 15, 2011.

¶ 29. IT IS FURTHER ORDERED that James M. Schoenecker shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 30. ANN WALSH BRADLEY, J. (*dissenting*). I believe the seriousness of Attorney Schoenecker's admitted conduct warrants rejection of the stipulation of the parties. Although a three-year suspension is a severe sanction, I think that Attorney Schoenecker's conduct may merit a greater sanction.

¶ 31. Because I would reject the stipulation, appoint a referee to preside over this case, and allow the complaint to proceed through the disciplinary process, I respectfully dissent.

¶ 32. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.