# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP48-D & 2015AP275-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against James M. Schoenecker, Attorney at Law: |

Office of Lawyer Regulation,
        Complainant,
       v.
James M. Schoenecker,
        Respondent.
------------------------------------------------
In the Matter of Disciplinary Proceedings Against James M. Schoenecker, Attorney at Law:

Office of Lawyer Regulation,
        Complainant-Respondent,
       v.
James M. Schoenecker,
        Respondent-Appellant.

ON THE PETITION FOR REINSTATEMENT OF SCHOENECKER

| | |
|---|---|
| OPINION FILED: | May 25, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 12, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, J., concurs (opinion filed). ZIEGLER, J., concurs, joined by ABRAHAMSON, J., (opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there were briefs filed by *Richard J. Cayo*, *Stacie H. Rosenzweig*, and *Halling & Cayo, S.C.*, Milwaukee. There was an oral argument by *Richard J. Cayo.*

For the complainant-respondent, there was a brief filed by *Julie M. Spoke*, *William J. Weigel*, and *Office of Lawyer Regulation*, Madison.  There was an oral argument by *William J. Weigel.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos.   2011AP48-D, 2015AP275-D

STATE OF WISCONSIN                 :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against James M. Schoenecker, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent,**

   **v.**

**James M. Schoenecker,**

      **Respondent-Appellant.**

**FILED**

**May 25, 2018**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY reinstatement proceeding.   *Reinstatement denied.*

¶1   PER CURIAM. Attorney James M. Schoenecker has appealed Referee James W. Mohr Jr.'s recommendation that Attorney Schoenecker's petition for the reinstatement of his license to practice law in Wisconsin be denied. Upon careful review, we agree with the referee that Attorney Schoenecker has failed to meet his burden of proof to establish the requirements for reinstatement at this time. Accordingly, we accept the referee's recommendation that the petition for reinstatement be denied. However, we determine that Attorney Schoenecker can

again petition for reinstatement six months after the date of this opinion. As is our usual practice, we further conclude that Attorney Schoenecker should be required to pay the full costs of this reinstatement proceeding, which are $6,809.66 as of March 23, 2018.

¶2 Attorney Schoenecker was admitted to practice law in Wisconsin in 2004. He is a graduate of Boston College and Columbia Law School. He practiced briefly in New York, practiced at Quarles & Brady in Milwaukee for a time, and then went to a small law firm in Delavan called the Clair Law Offices. In 2011, Attorney Schoenecker's license was suspended for three years. See In re Disciplinary Proceedings Against Schoenecker, 2011 WI 76, 336 Wis. 2d 253, 804 N.W.2d 686. Much of the misconduct in that case arose out of Attorney Schoenecker's personal and professional relationship with his former fiancé, M.F. In December 2007, Attorney Schoenecker and M.F. opened a joint checking account. M.F. also obtained a home equity line of credit and made a loan of $48,500 to Attorney Schoenecker. Attorney Schoenecker executed a promissory note whereby he promised to repay the loan with interest. Two days after making the loan, M.F. learned that Attorney Schoenecker had made cash withdrawals from her checking account at a casino, resulting in a $1,500 negative balance in her account. Thereafter, M.F. closed the joint checking account and ended her engagement to Attorney Schoenecker.

¶3 Attorney Schoenecker repaid some of the loan balance. At some point, M.F. filed a collection action against Attorney

2

Schoenecker. The parties reached a settlement and Attorney Schoenecker paid M.F. some $32,000 as part of a full resolution of the financial issues between them.

¶4 In December 2008 Attorney Schoenecker used M.F.'s personal information to enter her business account without her permission and make checks payable to himself. He was able to cash a $950 check, but an attempt to cash two more checks was apparently unsuccessful. As a result of those actions, Attorney Schoenecker was charged in two separate criminal proceedings. In a Walworth County case, he pled guilty to one felony count of identity theft and was placed on two years of probation and ordered to make restitution and pay court costs. In a separate Waukesha County case, he pled guilty to a misdemeanor charge of theft-moveable property. The Waukesha court imposed and stayed a sentence of four months in jail and placed Attorney Schoenecker on probation for one year. He was also required to pay M.F. restitution as well as pay court costs.

¶5 In 2008, Attorney Schoenecker became an associate at the Clair Law Offices. He informed the law firm he was representing M.F., so she was considered a client of the firm. Contrary to Clair Law Offices' policy, Attorney Schoenecker sent invoices to M.F. in the fall of 2008 showing that she owed over $13,000. A substantial number of the entries on the invoices were fraudulent.

¶6 In addition to the misconduct involving M.F., Attorney Schoenecker also set up his own separate law firm on the side

while he was working as an associate attorney for the Clair Law Office and did not inform the firm of this fact.

¶7 The final part of Attorney Schoenecker's misconduct giving rise to the three-year suspension involved fraudulent statements on his own personal bankruptcy proceeding.

¶8 In 2016, Attorney Schoenecker received an additional one-year license suspension. See In re Disciplinary Proceedings Against Schoenecker (Schoenecker II), 2016 WI 27, 368 Wis. 2d 57, 878 N.W.2d 163. The misconduct in that case concerned his involvement in a business partnership he entered into in 2012 with M.M. and T.H. The men established a limited liability company called GameMaster, LLC. T.H. gave Attorney Schoenecker $25,000 in cash as his capital contribution, and M.M. contributed $20,000. Instead of immediately depositing T.H.'s $25,000 into a GameMaster account, Attorney Schoenecker deposited the bulk of the money into his own personal checking account. He also used company funds to pay his personal credit card bills without preapproval from his partners, and he withdrew funds from company accounts in order to gamble at Potawatomi Casino in Milwaukee.

¶9 Attorney Schoenecker filed a petition for the reinstatement of his law license on January 30, 2017. The Board of Bar Examiners filed a report saying Attorney Schoenecker had complied with all continuing legal education requirements for reinstatement. The Office of Lawyer Regulation (OLR) recommended against reinstatement. A public hearing was held before Referee Mohr on July 18, 2017.

4

¶10 Attorney Schoenecker testified at the hearing that he is employed by a landscape maintenance, snow removal, and condominium property maintenance company. The owner of the company submitted a letter saying that he would feel comfortable with Attorney Schoenecker returning to the legal profession and that he trusts Attorney Schoenecker with company trucks and credit cards.

¶11 Attorney Schoenecker also testified that during the term of his suspension he has volunteered at his church, set up a chess club at a middle school, and assisted elderly neighbors with household tasks.

¶12 Attorney Schoenecker testified that in 2015 he started seeing a mental health professional who specializes in gambling addictions, James Harrison. Attorney Schoenecker said with Mr. Harrison's help he has been able to abstain from gambling. Attorney Schoenecker also explained that he banned himself from the Potawatomi Casino, and he also attends Gamblers Anonymous meetings. Mr. Harrison wrote a letter saying "if [Attorney Schoenecker] continues with his treatment plan, utilizes his support system, makes the changes that are necessary in his life, and continues to act and live responsibly, the chance for the situation to re-occur is minimal." Mr. Harrison went on to state that in his professional opinion, if Attorney Schoenecker's law license were reinstated, "he would continue to perform his duties as an attorney in an extremely professional manner. His prognosis is excellent."

¶13 T.H., one of the GameMaster partners, testified against Attorney Schoenecker's reinstatement petition. He said he did not feel his dispute with Attorney Schoenecker was resolved fairly, and he said he did not believe Attorney Schoenecker has the moral character to practice law in Wisconsin. T.H. said, "In my personal opinion anyone who can treat a lifelong friend the way I have been treated, you can get as much as help as you want for gambling problems, that doesn't change the core person in my opinion."

¶14 Edward Thompson, an attorney at Clair Law Offices, also testified in opposition to Attorney Schoenecker's reinstatement. He said Attorney Schoenecker was employed at the law offices in 2008 and 2009. When asked if Attorney Schoenecker would be trustworthy and have the moral character to practice law after having been treated for a gambling addiction, Attorney Thompson replied:

> I have some concern about that in regard to how he treated his employment relationship with Clair Law Offices, how he treated his ex-fiancée, and then how I read – with regard to the bankruptcy filings and with regard to GameMaster, the gentleman who was here earlier, I have some concerns that he's breaching trust with people he is closest to. So yeah, I have a concern whether he would do that with clients.

¶15 M.F. also testified in opposition to Attorney Schoenecker's reinstatement. She said she was reimbursed the money that Attorney Schoenecker took from her, but she said she did not believe he had ever expressed sincere or genuine remorse for his misconduct. When asked if, assuming Attorney

6

Schoenecker has been treated for a gambling problem, she would deem him to be trustworthy and having the moral character to practice law, her response was "Certainly not . . . I'm scared for the public if he keeps his law license." She went on to say:

> He's an opportunist. He's shown to be an opportunist. [He] will take advantage at any point he can. He has taken advantage of his next of kin, myself being his fiancée, two best friends, and the gentleman from Clair Law Office.

¶16 On cross-examination, M.F. said that the opinions she expressed came from "information or experiences I had over ten years ago."

¶17 Attorney Schoenecker's father and his sister both testified on Attorney Schoenecker's behalf. Attorney Schoenecker's sister said he has overcome his gambling addiction. A childhood friend of Attorney Schoenecker's also testified on Attorney Schoenecker's behalf. In addition, Attorney Schoenecker submitted a number of letters from acquaintances who supported his reinstatement petition.

¶18 The referee issued his report on August 18, 2017. The referee termed the case "a difficult matter" since on one hand it was quite clear Attorney Schoenecker desires his law license back and wishes he could atone for his past misconduct, but on the other hand, "the gravity and extent of his past conduct is troubling." The referee said all of Attorney Schoenecker's misconduct amounted to "selfish and either illegal or immoral acts." The referee said while Attorney Schoenecker blamed all

7

of the misconduct on his gambling addiction, clearly a number of the instances of misconduct have nothing to do with gambling, i.e., "lying to the partners of the law firm, improperly obtaining the firm's financial records, setting up a separate, undisclosed business operation, and lying under oath in bankruptcy court." The referee said all three of the OLR's witnesses testified they have serious doubts about Attorney Schoenecker's trustworthiness, and all said he never expressed any sense of apology or remorse to them for his conduct.

¶19 The referee said reinstatement hearings are not only an examination of what has taken place from the time of the original discipline until reinstatement is sought, but also an attempt to predict the future. The referee noted that this court has admonished referees that the primary focus of a reinstatement hearing should be on the petitioner's conduct between the suspension and the hearing. See In re Disciplinary Proceedings Against Carroll, 2004 WI 19, ¶16, 269 Wis. 2d 172, 675 N.W.2d 792. However, the referee said the facts of the original misconduct must also be taken in to account to help predict whether, going forward, the petitioner will satisfy the requirements of moral character. The referee said:

> It is my considered opinion that given the seriousness of his past conduct; given his failure to account for moral lapses other than blaming a gambling addiction; given his failure to explain how moral lapses unrelated to the gambling addiction have been cured; and given his failure to present any significant testimony necessary to overcome the strong testimony of three of his victims, I cannot in good conscience

8

say that Schoenecker has met the high burden of proof imposed on him by SCR 22.31.

¶20 Schoenecker's appeal argues that the OLR, in opposing reinstatement, has submitted only the testimony of individuals who were harmed by conduct that has already been accounted for and who have no first hand knowledge of anything of substance that has occurred since the suspensions. Attorney Schoenecker argues that in essence what the OLR is now saying is that it regrets its decision to stipulate to the level of discipline in the two underlying cases, and it believes the suspensions should have been longer.

¶21 Attorney Schoenecker argues that the referee's recommendation against reinstatement is not supported by the evidence. He says that the referee's findings about him were, overall, favorable, and he points out that the referee found Attorney Schoenecker's testimony to be sincere; that he admitted engaging in some "really bad behavior;" that he sought counseling; he paid restitution; he has been working as a laborer and was promoted to supervisor; and that he never realized "how privileged he was to have been a lawyer."

¶22 Attorney Schoenecker argues the only testimony in opposition to his reinstatement was based on outdated information and hearsay. He says while past conduct can be relevant to a determination as to whether a petitioner has the moral character to resume the practice of law, this court has said that a hearing "should not amount to a retrial of the

9

original disciplinary case."  See In re Disciplinary Proceedings Against Penn, 2002 WI 5, ¶7, 249 Wis. 2d 667, 673 N.W.2d 287.

¶23  Attorney Schoenecker says all three OLR witnesses were clearly still upset and all had formed subjective beliefs based on old or second hand information.  Attorney Schoenecker says that while it is understandable those witnesses would still be upset, they each testified they had no useful knowledge of his conduct since the time of his suspensions and instead based their conclusions about his current fitness to practice law on their prior experience with him and on what they learned from other OLR witnesses.  Attorney Schoenecker argues that the OLR did not offer a single piece of competent evidence that contradicted Attorney Schoenecker's evidence about his conduct and character since the time of his offenses, and he says the fact people aggrieved by his prior conduct are still aggrieved by it is not a reasonable basis to oppose his reinstatement.

¶24  Attorney Schoenecker argues he has met his burden of proof to show that he can safely be reinstated to the practice of law.  He says his witnesses have first-hand, recent information about his character, fitness, and abilities.  He says he has taken steps to learn what was driving his negative behavior and how to avoid repeating it, including attending Gamblers Anonymous meetings and seeking counseling from a licensed professional.  He says he intends to remain in treatment, and he says he has taken responsibility for his actions and is truly sorry for the harm he has caused others. Attorney Schoenecker argues that denying him reinstatement at

10

this point would serve only to punish him, not to protect the public.

¶25 The OLR argues that the referee correctly concluded that Attorney Schoenecker failed to meet his burden of proof for reinstatement. Specifically, the OLR says the referee appropriately found that Attorney Schoenecker failed to show the requisite moral character for reinstatement and failed to present adequate evidence or testimony that his moral lapses have been cured. The OLR also says the referee properly found that Attorney Schoenecker continued to blame his behavior on his gambling addiction and failed to explain that the moral lapses unrelated to gambling have been addressed. The OLR says Mr. Harrison's report, which says that Attorney Schoenecker's prognosis with regard to relapsing with respect to his gambling problem is excellent if he continues with his treatment plan, is insufficient to support a finding of fitness for reinstatement because "Harrison's report is only as good as the information provided to him by Schoenecker. If Schoenecker was not truthful with his therapist or did not provide him with all the necessary background information, then this court should not rely solely on the report as a sufficient basis for reinstatement."

¶26 The OLR says contrary to Attorney Schoenecker's claims, the OLR did not present Attorney Schoenecker's victims as witnesses in order to retry the prior disciplinary matters, but rather to rebut Attorney Schoenecker's claim that he has the current moral character to practice law in Wisconsin. The OLR

11

also argues that Attorney Schoenecker's reinstatement presentation exhibited a lack of remorse for his victims.

¶27 Supreme Court Rule 22.31(1)[1] provides the standard to be met for reinstatement. Specifically, the petitioner must show by clear, satisfactory, and convincing evidence that he or she has the moral character to practice law, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that he or she has complied with SCR 22.26[2] and the terms of

---

[1] SCR 22.31(1) provides:

The petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:

(a) That he or she has the moral character to practice law in Wisconsin.

(b) That his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

(c) That his or her representations in the petition, including the representations required by SCR 22.29(4)(a) to (m) and 22.29(5) are substantiated.

(d) That he or she has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

[2] SCR 22.26 provides:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability

(continued)

12

to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court of administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

(d) Within the first 15 days after the effective date of suspension or revocation, make all arrangements for the temporary or permanent closing or winding up of the attorney's practice. The attorney may assist in having others take over client's work in progress.

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

(i) Full compliance with the provisions of the suspension or revocation order and with the rules and procedures regarding the closing of the attorney's practice.

(ii) A list of all jurisdictions, including the state, federal and administrative bodies, before which the attorney is admitted to practice.

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

(f) Maintain records of the various steps taken under this rule in order that, in any court or administrative agency, together with the case number of each matter.

(continued)

13

the suspension. In addition to these requirements, SCR 22.29(4)[3]

states related requirements that the petition for reinstatement

---

(2) An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

(3) Proof of compliance with this rule is a condition precedent to reinstatement of the attorney's license to practice law.

[3] SCR 22.29(4) provides:

The petition shall show all of the following:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a

(continued)

14

"shall show."  All of these additional requirements are also effectively incorporated into SCR 22.31(1).

¶28 This court will adopt the referee's findings of fact unless they are clearly erroneous.  Conclusions of law are reviewed de novo.  See In re Disciplinary Proceedings Against Jennings, 2009 WI 26, ¶22, 316 Wis. 2d 6, 762 N.W.2d 648.

¶29 Upon careful review of the matter, we adopt the referee's findings and conclusions and agree with the referee that at this time Attorney Schoenecker has failed to meet his burden of demonstrating that he has met the high burden of proof imposed upon him by SCR 22.31.  We do not reach this decision lightly.  Attorney Schoenecker has not practiced law since 2011. The record demonstrates that he has made progress toward addressing the root causes of the behavior that led to his two suspensions.  He is to be commended for attending Gamblers Anonymous meetings and continuing to seek treatment from Mr. Harrison.  His volunteer efforts in the community are also commendable.  However, we share the referee's concern that Attorney Schoenecker has failed to fully account for moral lapses other than his gambling addiction, and he has failed to explain how the moral lapses unrelated to the gambling addiction have been addressed to insure they will not recur in the future.

---

person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

15

In addition, we concur with the referee that Attorney Schoenecker's failure to present live testimony, either from Mr. Harrison or other character witnesses who could speak to whether Attorney Schoenecker has the current moral character to practice law in Wisconsin, impeded him in demonstrating that he has met his burden of proof under SCR 22.31.

¶30 Pursuant to SCR 22.33(4), a petitioner normally may again file a petition for reinstatement nine months after denial. However, we have the discretion to effectively reduce that period. See, e.g., In re Disciplinary Proceedings Against Carroll, 2004 WI 19, 269 Wis. 2d 172, 675 N.W.2d 792. In this case we conclude that Attorney Schoenecker should be permitted to file a new petition for reinstatement six months after the date of this opinion. In the new reinstatement proceeding he may be able to present himself in a better light and demonstrate through live testimony and specific examples that he is fit to resume the practice of law without danger to the public. As is our normal practice, we deem it appropriate to impose the full costs of this reinstatement proceeding on Attorney Schoenecker, which are $6,809.66 as of March 23, 2018.

¶31 IT IS ORDERED that the petition of James M. Schoenecker for the reinstatement of his license to practice law in Wisconsin is denied.

¶32 IT IS FURTHER ORDERED that Attorney Schoenecker may again file a petition for reinstatement six months after the date of this decision.

16

¶33  IT IS FURTHER ORDERED that within 60 days of the date of this order, James M. Schoenecker shall pay to the Office of Lawyer Regulation the costs of this reinstatement proceeding, which are $6,809.66 as of March 23, 2018.

¶34 SHIRLEY S. ABRAHAMSON, J. *(concurring).* As I wrote in dissent in In re Disciplinary Proceedings Against Mandelman, 2018 WI 56, ___ Wis. 2d ___, ___ N.W.2d ___, the court is not consistent in its rulings on reinstatement.

¶35 I join the concurrence of Justice Annette Kingsland Ziegler with regard to the reinstatement of Attorney Schoenecker.

¶36 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I agree with the court that at this time Attorney Schoenecker has failed to establish the requirements for the reinstatement of his license to practice law in Wisconsin. I write separately because I have concern that the court may appear to be suggesting that if certain things are done, Attorney Schoenecker will be reinstated. See majority op., ¶30. The majority's comments about what Attorney Schoenecker might do differently the next time around should not, in my view, be read as prophesying what the court's decision will be in a subsequent reinstatement proceeding. At a subsequent proceeding Attorney Schoenecker bears the burden of demonstrating to the court that he should be reinstated. The criteria the court today suggests may or may not prove to be sufficient.

¶37 For the foregoing reason, I respectfully concur.

¶38 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this concurrence.